**Richard PECAROVICH, Plaintiff,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant.**

**No. CV 99–2129 ABC(MANX).**

United States District Court, C.D. California.

Jan. 24, 2000.

---

Paul S. Sigelman, Sigelman & Perlman Law Firm, Beverly Hills, CA, for plaintiff.

Peter H. Klee, Seth M. Friedman, Luce, Forward, Hamilton & Scripps, San Diego, CA, for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COLLINS, District Judge.

Defendant's Motion pursuant to Fed. R.Civ.P. 56 was taken under submission by this Court on January 19, 2000. After reviewing the materials submitted by the parties and the case file, it is hereby ORDERED that Defendant's Motion for Summary Judgment is GRANTED.

### I. Procedural Background

On February 25, 1999, Plaintiff Richard Pecarovich filed a Complaint against Defendant Allstate Insurance Company, alleging causes of action for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) actual and constructive fraud; and (4) negligence. On November 24, 1999, the Court dismissed Plaintiff's negligence claim.

On November 22, 1999, Allstate filed the instant Motion for Summary Judgment. Plaintiff filed an opposition on December 13, 1999.[1] On December 27, 1999, Allstate filed its reply.[2]

---

1. Plaintiff also objected to certain paragraphs and exhibits of the declaration of Richard Rossi. The Court does not rely upon any of the statements or exhibits to which Plaintiff objects. Accordingly, the objections are overruled as moot.

2. Defendant also filed objections to the evidence presented by Plaintiff in opposition to the summary judgment motion. Those objections are addressed in the Appendix to this Order.

The Court also notes that, on January 14, 2000, Plaintiff filed a "Sur-opposition Brief" along with additional exhibits and declarations opposing the summary judgment motion. However, the Local Rules do not provide for the filing of a "sur-opposition." And Plaintiff did not ask for leave of the Court to file his "sur-opposition." The Court, therefore, will not consider the sur-opposition in its ruling. The Court also will not address in detail the untimely additional exhibits and declarations. Indeed, the Court is free to disregard this untimely evidence. *See Marshall v. Gates*, 44 F.3d 722, 725 (9th Cir. 1995). The Court, nevertheless, has reviewed Plaintiff's second round of evidence and finds that, even if admissible, none of the evidence creates a genuine issue of material fact.

## II. Summary Judgment Standard of Review

It is the burden of the party who moves for summary judgment to establish that there is "no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir. 1978). If the moving party has the burden of proof at trial (the plaintiff on a claim for relief, or the defendant on an affirmative defense), the moving party must make a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 487–88 (1984)). This means that, if the moving party has the burden of proof at trial, that party must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in that party's favor. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986).

If the opponent has the burden of proof at trial, then the moving party has no burden to negate the opponent's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the moving party does not have the burden to produce *any* evidence showing the absence of a genuine issue of material fact. *Id.* at 325, 106 S.Ct. 2548. "Instead, ... the burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings ... [T]he adverse party's response ... *must set forth specific facts* showing that there is a genuine issue for trial." Fed.R.Civ.P.

56(e) (emphasis added). A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish an essential element to that party's case, and on which that party would bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in favor of the nonmovant. *Id.* at 248, 106 S.Ct. 2505.

## III. Factual Background[3]

Pecarovich bought a Standard Flood Insurance Policy ("SFIP") issued by Allstate pursuant to the National Flood Insurance Act. (*See* Pl.'s Stmnt. in Resp. to Def.'s Stmnt. of Uncontr. Facts ("Facts"), ¶ 1.) The SFIP was in effect from August 21, 1997 to August 21, 1998 and covered Pecarovich's home ("the Property"). (*Id.* at ¶¶ 2, 3.)

The Property is located at the foot of a canyon. (Pecarovich decl. at ¶ 5.) Runoff water funnels from about a thousand acres of the canyon hillside directly onto the point on the Property where Pecarovich's house is built. (*Id.*) Just above the house on the Property, a concrete barrier and the opening to a drainage pipe were built to divert the runoff water away from the house. (*Id.* at ¶ 6.) The drainage pipe continues downward to a junction box closer to the rear of the house. (Pecarovich depo. at 135:9–18.) This junction box then diverts the water into another concrete pipe that spills the runoff water out onto the driveway and into the street gutters. (*Id.* at 88:8–12, 135:9–18.)

The drainage pipe system, however, failed during the El Nino storms of 1997–98. (Facts, ¶ 5.) It appears that the pipe system became clogged with dirt and mud.

---

3. As required for purposes of a summary judgment motion, this section views the evidence in the light most favorable to Pecarovich, the non-movant.

(*Id.*) The clog resulted in water gushing out at the junction box like a geyser into the area directly behind Pecarovich's house. (*Id.* at ¶¶ 5, 6; Pecarovich depo. at 135:20–136:8.)[4] The excess water would tend to pool in that area and then flow around the side of the house and out into the street. (*Id.* at ¶¶ 7, 8.) Pecarovich first noticed this occurrence in or about December 1997 and noted that it occurred for weeks afterwards whenever a heavy rainstorm would hit.[5] (Facts, ¶¶ 4, 10.)

After a large rainstorm on February 25, 1998, Pecarovich noticed some structural damage to the Property. (*Id.* at ¶ 11.) The cement slab foundation at his house suffered breaks and separated from the supporting walls. (Pecarovich decl. at ¶ 9.) After inspecting the home, city safety officials warned Pecarovich to vacate the Property. (*Id.* at ¶ 10.) The cost of correcting the damage to the house was estimated at $243,000. (*Id.* at ¶ 16.) This rainstorm did not inundate or damage the adjacent neighbors' properties. (Facts, ¶ 9.)

Pecarovich filed a claim with Allstate under the SFIP for this damage to his Property. (Facts, ¶ 14.) As part of its investigation into the damage, Allstate agreed to pay for the services of a geologic engineer, a structural engineer, and an architectural firm. (*Id.* at ¶ 15.) Allstate eventually paid for these services, although not completely until October 21, 1999. (Ray decl., Ex. 1.) Allstate ultimately denied the claim on October 20, 1999. (Facts, ¶ 19.)

The parties are in dispute over the cause of the damage to the Property. (*See* Facts, ¶ 13.) Allstate asserts that the damage was caused by the movement of soils beneath Pecarovich's home that slowly became saturated with water over time. Pecarovich contends that the damage was caused by subsidence resulting from the February flood. Allstate relies on the opinion of two experts, Steven Coolong and Ian Kennedy. Pecarovich also relies on the opinion of Kennedy.[6] Coolong opines that the damage was by caused "settlement of compressible fill soil and unstable landslide debris." (Coolong decl., Ex. 1 at 5.) This settlement, according to Coolong, appears to have been caused by "slow and gradual rainwater percolat[ing] into the unstable fill and landslide soils below the dwelling." (*Id.* at 6.) However, "[r]unoff from a February 1998 storm did not cause or worsen the earth movement damages." (*Id.*) Kennedy similarly concluded that the damage was caused by settlement of the soil, or subsidence. (Rossi decl., Ex. 2 at 20.) However, this subsidence, according to Kennedy, was caused by water saturation of the soil that occurred "during the recent rainy season" and because of "the recent flooding." (*Id.* at 20, 23.)

## IV. Analysis

### A. Pecarovich's Claim for Breach of SFIP Contract.

Pecarovich asserts that the SFIP covers the damage to the Property because it was

---

4. Plaintiff disputes that the cause of the pipe system failure was the clog caused by the debris. Instead, he asserts that the force of the water on February 24, 1998 was the primary cause of the pipe failure. (*See* Facts, ¶ 5.) However, in his deposition, he states that he first noticed this "geyser" occurrence in December 1997. (*See* Pecarovich depo. at 271:5–272:5.)

5. Plaintiff disputes that this "geyser" occurrence continued for weeks whenever there was a heavy rainstorm. (*See* Facts, ¶ 10.) However, he fails to point to any evidence that contradicts Defendant's evidence supporting this fact.

6. Allstate seeks to rely on the testimony of Pecarovich. However, Pecarovich is not qualified to testify as to the cause of the damage. Moreover, Pecarovich's testimony only establishes that the land moved under his home. However, that testimony is not inconsistent with a land subsidence. Pecarovich, on the other hand, seeks to rely on the purported testimony of Richard Rossi, Allstate's designated representative and claim adjuster on this claim. Allstate's objections to that evidence have been sustained. However, Rossi's testimony, like Pecarovich's testimony, would establish only land subsidence.

caused by land subsidence resulting from a flood. On the other hand, Allstate contends that the damage was not covered by the SFIP because the damage was not caused by a flood, as defined in the policy. Allstate also contends that because the damage was a direct result of land movement, it is excluded from coverage even if the land movement was caused by a flood.[7]

### 1. Interpretation of the SFIP.

■ "SFIPs issued under the National Flood Insurance Program ... are governed by federal law applying standard insurance law principles." *McHugh v. United Service Auto. Assoc.*, 164 F.3d 451, 454 (9th Cir.1999). Therefore, the interpretation of SFIPs is controlled by federal common law and is a question of law for the Court. *Id.* Because interpretation is a question of law, expert testimony is "only relevant for the historical facts that [the expert] observed and not for [the] legal conclusions as to what conditions were covered or excluded under the terms of the policy." *Id.* at 454.

### 2. Definition of Flood under the SFIP.

The SFIP provides coverage for "all direct physical loss by or from flood to the insured property." (Allstate SFIP at 4 (emphasis omitted).)[8] A "flood" is defined by the policy as

A general and temporary condition of partial or complete inundation of normally dry land area from:

1. The overflow of inland or tidal waters.

2. The unusual and rapid accumulation or runoff of surface waters from any source.

3. Mudslides....[9]

(*Id.* at 7.) The policy's Article 3(C) expressly excludes from coverage a "flood which is confined to the premises on which [the] insured property is located unless the flood is displaced over two acres of the premises." (*Id.* at 9 (emphasis omitted).) This exclusion defines, in part, "flood" for purposes of coverage. *Bull's Corner Rest., Inc. v. Director of FEMA*, 759 F.2d 500, 502 (5th Cir.1985).

### 3. Application of "Flood" definition to Pecarovich's claim.

■ Plaintiff has the burden of proof of establishing that a flood, as defined by the SFIP, caused his loss. *Bull's Corner*, 759 F.2d at 503. Plaintiff relies on Kennedy's expert opinion to meet this burden.[10] Kennedy concludes that the damage was caused by a flood. (Rossi decl., Ex. 2 at 23.) The Court cannot, however, abdicate its duty to determine the law (in this case, whether certain facts establish coverage under the SFIP) to an expert. *See McHugh*, 164 F.3d at 454. Kennedy's

---

7. Defendant also contends that if the damage was covered by the SFIP, Plaintiff's failure to file a proof of loss bars his claim on the policy. Because the Court finds that the SFIP did not provide coverage for the loss, the Court does not address Defendant's proof of loss theory.

8. A copy of the policy is attached as Ex. 1 to the declaration of Victoria Duron and as Ex. A to Plaintiff's Opposition.

9. A second definition of flood is inapplicable to this case.

10. Plaintiff also attempts to rely on newspaper pictures of flooding in parts of Laguna Beach and a one-page document purported to be part of a letter written by Rossi to Allstate.

However, the Court sustained Allstate's objections to those exhibits. Nevertheless, the Court notes that photographs of an apparent flood affecting a neighborhood other than Plaintiff's immediate neighborhood would not satisfy his burden of showing that a "flood" affected his property. *See Mussoline v. Morris*, 692 F.Supp. 1306, 1316 (S.D.Fla.1987) ("the correct focus must be upon the plaintiffs' immediate neighborhood, rather than the Miami area, and upon the amount of damage sustained by neighborhood premises, to determine whether a general condition of flooding was present"). And Rossi's purported opinion, even if he could be established as an expert, does not create a genuine issue as to whether the historical facts constitute a flood for purposes of the SFIP. *See McHugh*, 164 F.3d at 454.

opinion may support the proposition that the loss was caused by the settling of the ground underneath the Property and that the settling of the ground was caused by saturation from the rain, runoff, and accumulation of water that occurred on February 25. However, Plaintiff points to no evidence, admissible or otherwise, showing that his immediate neighborhood suffered from partial or complete inundation of normally dry land area.

The undisputed facts show that rain and runoff inundated, at most, the backyard area directly behind Pecarovich's house. This "inundation" did not affect any of Pecarovich's adjacent neighbors, whether uphill or downhill from him. Nor did it affect an area larger than two acres on Pecarovich's property. (See Pl.'s Opp., Ex. Y; Pecarovich decl., photos adjacent to ¶¶ 5, 6.) Accordingly, Pecarovich fails to show that a "flood," as defined by the SFIP, affected the Property. *Cf. Bull's Corner,* 759 F.2d at 503 (holding that policy "plainly does not provide coverage" where only appellant's property and one adjacent property suffered water damage); *Segal,* 390 F.Supp. at 1077 (holding that an SFIP did not provide coverage where flooding was substantially confined to one individual's house); *Mussoline,* 692 F.Supp. at 1316 (holding that "in order to avoid exclusion, a claimant must demonstrate that flooding ... occurred to the insured premises, adjacent premises (unless the insured premises is at least two acres) and nearby property in the immediate vicinity"). Thus, Allstate did not breach the SFIP by failing to extend coverage on Pecarovich's claim.[11]

**B. Pecarovich's Bad Faith Claim.**

▮ Pecarovich asserts a bad faith claim based on Allstate's actions in connec-

tion with the SFIP claim. However, to prevail on a bad faith claim, a plaintiff must prove that benefits were due under the policy. *Waller v. Truck Ins. Exch.,* 11 Cal.4th 1, 35–36, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995); *Charlin v. Allstate Ins. Co.,* 33 F.Supp.2d 858, 861 n. 4 (C.D.Cal. 1998). Consequently, if an insurer does not breach an insurance contract, there can be no liability for bad faith. *State Farm Mutual Auto. Ins. Co. v. Davis,* 7 F.3d 180, 184 (9th Cir.1993); *Provident Life & Acc. Ins. Co. v. Fleischer,* 26 F.Supp.2d 1220, 1226 n. 8 (C.D.Cal.1998).

The Court has found that Allstate did not breach the SFIP by denying coverage on Pecarovich's claim. Thus, Pecarovich's bad faith claim must necessarily fail.

**C. Pecarovich's Claim for Moneys Due.**

Pecarovich also seeks reimbursement for payments to two engineers and an architect that prepared reports of the damage to the Property. Allstate agreed to pay for these professional services. (Facts, ¶ 15.) Allstate had not made good on its promise as of the date that Pecarovich filed the complaint in this case. Since that date, however, Allstate has paid for these professional services. (*Id.* at ¶ 16.) Thus, Pecarovich's claim is moot.

**D. Pecarovich's Fraud Claim**

Pecarovich asserted actual and constructive fraud claims against Allstate. As to the actual fraud claim, Allstate points to an absence of evidence supporting Pecarovich's assertion that he relied upon some misrepresentation made by Allstate. In short, Pecarovich has not come forward with any evidence supporting his actual fraud claim.[12]

---

**11.** Because the Court finds that no flood affected Pecarovich's property, the Court does not address Defendant's contention that the land movement exclusion applies to the claim. The Court notes, however, that if the land subsidence provision cannot be interpreted to completely nullify the land movement provision, then it would follow that the land movement provision cannot be interpreted to completely nullify the land subsidence provision.

**12.** Indeed, Pecarovich admits that no one from Allstate ever made any representation about the scope of coverage under the SFIP. (*See* Facts, ¶ 18.)

■ As to the constructive fraud claim, Pecarovich must show (1) a fiduciary relationship, (2) a non-disclosure, (3) an intent to deceive, and (4) causation. 5 Witkin, *California Procedure,* § 673 (4th ed.1997). Pecarovich asserts that Allstate committed constructive fraud because on the first page of the SFIP, "under the bold heading 'SUMMARY OF STANDARD FLOOD INSURANCE POLICY CHANGES DWELLING FORM,' Allstate announced that there was protection, 'providing coverage for losses caused by land subsidence,' where 'there is a general and temporary condition of flooding in the area.'" (Def.'s Opp. at 36.) Pecarovich's position appears to be that Allstate failed to disclose that it intended to preclude recovery for land subsidence losses by relying on policy language that was not on the first page of the policy.

■ Pecarovich, however, fails to show a fiduciary relationship or any other form of confidential relationship. *See Solomon v. North American Life and Cas. Ins. Co.,* 151 F.3d 1132, 1138 (9th Cir.1998) (holding that, under California law, an insurer does not owe a fiduciary duty to an insured). Additionally, according to Pecarovich, the non-disclosure consists of Allstate's intent to apply express policy provisions found in the policy *that was provided to Pecarovich.* Thus, Pecarovich is asking the Court to find that a disclosure is actually a non-disclosure. The Court refuses to adopt such an Orwellian definition of non-disclosure. Finally, the Court also finds that Pecarovich has failed to provide evidence to support the intent and causation elements.

Thus, Pecarovich's fraud claims are untenable.

### V. Conclusion

For the reasons articulated herein, the Court GRANTS summary judgment to Defendant Allstate Insurance Company as to all claims asserted by Plaintiff Richard Pecarovich.

**SO ORDERED.**

**Appendix to Order Granting Defendant's Motion for Summary Judgment *Pecarovich v. Allstate,* CV 99–2129 ABC (MANx)**

On December 13, 1999, Plaintiff filed an opposition to Defendant's Motion for Summary Judgment that included various exhibits. Plaintiff also filed a Declaration in Support of the Opposition. Defendant filed objections to this evidence on December 27, 1999.

On January 12, 2000, the Court ordered Plaintiff to file a written response, if any, to Defendant's objections. Plaintiff has not filed such a reply. However, Plaintiff did file additional declarations regarding exhibits that appear to respond, in part, to Defendant's objections. Defendant objects to these declarations as untimely and a violation of the Local Rules. The Court accepts these declarations to the extent they respond to Defendant's initial objections.

The Court rules as follows on Defendant's objections to the declaration of Richard Pecarovich filed on December 13, 1999:

¶ 4: Objection pursuant to FRE 602 is SUSTAINED as to first sentence;

¶ 6: Objection pursuant to FRE 602 is SUSTAINED as to everything except "a concrete barrier and drainage collection pipe (photo) ... was built to divert runoff water;"

¶ 7: Objections pursuant to FRE 602 and 701–702 are SUSTAINED as to whole paragraph;

¶ 8: Objection pursuant to FRE 602 is SUSTAINED as to whole paragraph;

¶ 9: Objections pursuant to FRE 602 and 701–702 are SUSTAINED as to the first sentence;

¶ 14: Objection pursuant to FRE 602 is SUSTAINED as to first sentence;

¶ 16: Objection pursuant to FRE 602 is SUSTAINED as to whole paragraph;

¶ 17: Objection pursuant to FRE 802 is SUSTAINED as to everything after "and;"

Appendix to Order Granting Defendant's Motion for Summary Judgment *Pecarovich v. Allstate*, CV 99–2129 ABC (MANx)—Continued

¶ 19: Objection pursuant to FRE 802 is SUSTAINED as to whole paragraph; Objection pursuant to FRE 602 is SUSTAINED as to last sentence.

¶ 21: Objection pursuant to FRE 602 is SUSTAINED as to first sentence; and

¶ 23: Objections pursuant to FRE 602 and 701–702 are SUSTAINED as to whole paragraph.

All other objections to the declaration are OVERRULED.

The Court rules as follows on Defendant's objections to the exhibits attached to Plaintiff's opposition:

Ex. B: Objection pursuant to FRE 802 is SUSTAINED;

Ex. C: Objections pursuant to FRE 802 and 901 are SUSTAINED; Plaintiff's request for judicial notice pursuant to FRE 102 is DENIED;

Ex. D: Objections pursuant to FRE 802 and 901 are SUSTAINED; Plaintiff's request for judicial notice pursuant to FRE 102 is DENIED;