Mario MIGLIORI, Irma
Migliori, Plaintiffs,

v.

BOEING NORTH AMERICAN,
INC., et al., Defendants.

No. CV99–13192ABC(RCX).

United States District Court,
C.D. California.

April 17, 2000.

Robert Mandell, Mara Burnett, Weinreb, Weinreb & Mandell, Northridge, CA, for plaintiff.

Brad Brian, Stephen Kristovich, Munger, Tolles & Olson, Los Angeles, CA, for defendant.

## ORDER GRANTING IN PART DEFENDANTS' MOTION PURSUANT TO FED.R.CIV.P. 12(b)(6)

COLLINS, District Judge.

After reviewing the materials submitted by the parties and the case file, the Court GRANTS IN PART Defendants' motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### I. Procedural Background

Plaintiffs Mario and Irma Migliori filed a complaint in state court on September 13, 1999 against various entity Defendants related to Boeing North American, Inc. and three individual Defendants. Plaintiffs subsequently filed a First Amended Complaint ("FAC") in November 1999. The entity Defendants (collectively "Boeing") removed to this Court on December 16, 1999.

Boeing moved to dismiss on January 3, 2000. Along with the motion to dismiss, it filed a voluminous request for judicial notice. The case was transferred to this Court on January 21. On January 24, Plaintiffs filed an opposition along with their own smaller request for judicial notice. Plaintiffs also objected to Boeing's request for judicial notice.[1] Boeing filed a reply on February 1, along with a second much smaller request for judicial notice. On February 18, Defendant M.E. Remey

---

1. Plaintiffs assert that most of the exhibits are irrelevant to the determination of this motion. The Court agrees and SUSTAINS Plaintiffs' objections to exhibits 1–117, 131–135, and 138–179. The Court OVERRULES Plaintiffs' objections to exhibits 136 and 137 which are complaints filed in *Adams v. Boeing North American, Inc*. The Court takes judicial notice of those complaints. The Court also takes judicial notice of Exhibits 181–186, which are documents filed in the *Adams* case. The Court declines to take judicial notice of any other exhibit because those exhibits do not affect the outcome of this motion.

The Court also takes judicial notice of Plaintiffs' Exhibits A–C, which are documents that were filed in the *Adams* case. The Court declines to take judicial notice of Exhibit D, a report that was allegedly produced in a prior Workers' Compensation proceeding.

joined in Boeing's motion. On March 16, Boeing filed a second supplemental request for judicial notice of an order of the Riverside County Superior Court.[2] The Court placed the matter under submission on March 30.[3]

## II. Standard of Review

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988).

A court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986); *see also Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir.1980) (finding that the complaint must be read in the light most favorable to the plaintiff). However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981); *Hiland Dairy, Inc. v. Kroger Co.*, 402 F.2d 968, 973 (8th Cir.1968).

Furthermore, in ruling on a 12(b)(6) motion, a court cannot generally consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir.1991), *overruled on other grounds by Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). A court may, however, consider exhibits submitted with the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir.1989).

Lastly, a Rule 12(b)(6) motion "will not be granted merely because [a] plaintiff requests a remedy to which he or she is not entitled." William W Schwarzer, et al., *Civil Procedure Before Trial* § 9:230. "It need not appear that plaintiff can obtain the *specific* relief demanded as long as the court can ascertain from the face of the complaint that *some* relief can be granted." *Doe v. United States Dept. of Justice*, 753 F.2d 1092, 1104 (D.C.Cir. 1985); *see also Doss v. South Central Bell Telephone Co.*, 834 F.2d 421, 425 (5th Cir. 1987) (demand for improper remedy not fatal if claim shows plaintiff entitled to different form of relief).

## III. Analysis

### A. Factual Background Based on Allegations in FAC.

M. Migliori worked for Boeing at the Rocketdyne facility from at least 1960 until he was laid off in 1972. (FAC ¶¶ 3, 28, 29.) Migliori's primary function was the crushing and handling of radioactive material. (FAC ¶ 3.)

Operations at the Rocketdyne facility in the 1960's included fabrication of fuel elements for nuclear reactors and other related technologies. These operations involved the use of enriched uranium, uranium aluminide contaminants, and other uranium compounds. These substances are radioactive, toxic, and carcin-

---

2. Although it could take judicial notice of this order, the Court declines to do so because it would not affect the outcome of this motion.

3. The Court notes that Plaintiff filed a surreply and that Defendants filed a response to the sur-reply. The Court will not consider these filings. *See Pecarovich v. Allstate Ins. Co.*, 80 F.Supp.2d 1094, 1095 n. 2 (C.D.Cal. 2000).

ogenic. (FAC ¶ 16.) In handling, using, and disposing of these materials, Boeing released an excessive amount of these uranium compounds into the environment at the Rocketdyne facility and thereby exposed its workers, including Migliori, to toxic levels of these materials. (FAC ¶¶ 17, 22, 23.)

For instance, in 1965, Boeing was involved in fabricating radioactive fuel elements for the Idaho Nuclear Corporation. The work was performed in a location known as the "Powder Room." In the Powder Room, enriched uranium and aluminum were formed, pulverized, and cold pressed to fabricate these fuel elements. (FAC ¶ 20.) During this process, enriched uranium and aluminide contaminants became airborne and were inhaled by the workers in the Powder Room. (FAC ¶ 21.) M. Migliori was one of these workers.[4]

Boeing took no steps to properly train its employees in the proper handling of these radioactive materials, (FAC ¶ 24), failed to provide adequate safeguards for work with these materials, (FAC ¶ 25), and violated various laws in its operations, (FAC ¶ 26). Boeing, however, did monitor its personnel and determined that, beginning in 1960, Migliori had been exposed to excessive levels of radiation. (FAC ¶ 27.) However, this information was withheld from Migliori until September 1998. Instead, in the 1960's, Boeing informed Migliori that his "treatment" at UCLA had abated any radiation from his system and, that in any event, no excessive exposure of radiation had occurred. (Id.) Given these assurances, Migliori believed that Boeing was taking all the necessary steps to insure workplace safety. (FAC ¶ 28.)

By 1968, Migliori was suffering from physical symptoms related to radioactive exposure. Boeing granted Migliori a medical leave but still did not provide any information concerning Migliori's massive exposure to radiation. Without this information, Migliori's doctors mis-diagnosed his symptoms as psychosomatic and placed him in a psychiatric ward for nine months. (FAC ¶ 29.) Upon his release from the psychiatric ward, Migliori returned to work but continued to seek medical attention for his ailments. In 1970, a pre-cancerous spinal cord tumor was removed from Migliori. Migliori was eventually laid off in 1972 without being informed of the radiation levels to which he was exposed. (Id.)

In 1994, Migliori was diagnosed with cancer. (FAC ¶ 29). On September 15, 1998, Migliori first became aware that his cancer may have been caused by his workplace exposure. (FAC ¶ 32). On that date, Boeing notified him that it was opening a workers' compensation claim in connection with his cancer. In June 1999, Boeing provided a previously undisclosed report that detailed the massive nature of Migliori's radioactive exposure while working in the Rocketdyne facility. (Id.) Migliori seeks redress for Boeing's conduct in exposing him to these excessive levels of radiation.

I. Migliori is M. Migliori's spouse. She asserts a loss of consortium claim against Boeing. (FAC ¶¶ 78–79.)

## B. Claim Preclusion.

This case is not the first time that the Miglioris have tried to recover from Boeing for M. Migliori's cancer and I. Migliori's loss of consortium. On September 3, 1998, the Miglioris, along with various other plaintiffs, sued Boeing in *Adams, et al. v. Boeing North American, Inc., et al. Adams* was filed in Los Angeles Superior Court. *Adams* was resolved when the California Court of Appeals issued a writ ordering the trial court to sustain Boeing's demurrer without leave to amend. *See McKelvey v. Boeing North American, Inc.,* 74 Cal.App.4th 151, 162, 86 Cal.Rptr.2d 645 (1999). Boeing contends that *Adams*

---

4. Plaintiffs assert that M. Migliori worked in the Powder Room. (Pl.'s Opp. at 2.) Such a conclusion also can be reasonably inferred from the FAC's allegations.

precludes the claims in this present litigation.

## 1. General claim preclusion principles.

██ "Claim preclusion treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action.'" *Robi v. Five Platters, Inc.,* 838 F.2d 318, 321 (9th Cir.1988) (internal quotations omitted). Under the Full Faith and Credit Act, federal courts must apply the claim preclusion rules of a particular state to judgments issued by courts of that state. *Id.* (citing *Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 523, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986)). Thus, California law determines the claim preclusive effect of *Adams.*

██ Under California law, claim preclusion "precludes the maintenance of a second suit between the same parties on the same cause of action so long as the first suit concluded in a final judgment on the merits." *Los Angeles Branch NAACP v. Los Angeles Unified School District,* 750 F.2d 731, 736–37 (9th Cir.1984). "All issues that were litigated or that might have been litigated as part of the cause of action are barred." *Id.* at 737. There is no dispute that the *Adams* decision is final and on the merits. Additionally, with the exception of the individual defendants, there is no question that the parties in this litigation were parties in the *Adams* litigation.[5] The issue is whether the "causes of action" are the same.

██ California relies on the "primary rights" theory to determine whether there is more than one cause of action. *Slater v. Blackwood,* 15 Cal.3d 791, 795, 126 Cal. Rptr. 225, 543 P.2d 593 (1975). Under the "primary rights" theory, "the invasion of one primary right gives rise to a single cause of action." *Id.* Thus, "a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty." *Crowley v. Katleman,* 8 Cal.4th 666, 681, 34 Cal.Rptr.2d 386, 881 P.2d 1083 (1994). The primary right itself "is simply the plaintiff's right to be free from the particular injury suffered." *Id.* (citing *Slater,* 15 Cal.3d at 795, 126 Cal. Rptr. 225, 543 P.2d 593). Thus, to determine whether this action is precluded, the Court must determine the cause of action that was asserted in *Adams.*

## 2. The cause of action asserted in *Adams.*

The *Adams* action arose from the "release and improper use and disposal of toxic and hazardous substances throughout the Rocketdyne Facilities including, but not limited to, trichloroethylene ..., trans–1,2–dichloroethane ..., [and] hexavalent chromium ... which resulted in the contamination of the groundwater, soil, and subsurface soil." (*Adams* TAC ¶ 1.)[6] The release of these substances was the wrongful conduct alleged to have damaged the *Adams* plaintiffs. (*Id.* at ¶ 26.) However, the *Adams* plaintiffs expressly excluded any allegations concerning the handling, use, or disposal of radioactive materials. (Defs.' Ex. 181.)

The damages alleged by all plaintiffs, including the Miglioris, consisted of "great physical, mental and nervous pain and suffering, including fear of cancer, and ... medical and incidental expenses for their treatment and care." (*Adams* TAC ¶ 1.) The damages also included an alleged impairment in M. Migliori's "ability to work, earn money and accumulate money." (*Id.* at ¶ 50.) Finally, I. Migliori asserted a claim for loss of consortium. (*Id.* at ¶ 51.)

---

5. Thus, the claim preclusion defense does not apply to Defendant Remley, who joins in the motion.

6. The *Adams* Third Amended Complaint ("TAC") was provided by Defendants as Exhibit 187.

### 3. *Adams* does not preclude M. Migliori's claims.

Boeing asserts that the claims of M. Migliori are barred because "[i]n short, plaintiff[ ] now allege[s] the same injuries to the same interests as [he] alleged in the *Adams* action." (Defs.' Opp. at 4.) The Court disagrees for two reasons: (1) Boeing has failed to show that Migliori seeks relief for the same injury, and (2) in any event, Boeing misapplies the "primary rights" test.

#### a. Boeing fails to show that Migliori seeks relief for the same injury.

Boeing points out that in both *Adams* and this case, Migliori sought relief for personal injuries, emotional distress, fear of cancer, and financial injury. Personal injury and emotional distress, however, are general descriptions for types of damages. Thus, even if the Court could assume that the fear of cancer and financial injury alleged in *Adams* were interests that could be injured only once, the Court is left with the question of the personal injury and emotional distress. The symptoms of the emotional distress were not identified in *Adams* and have not yet been identified in this case. And although the personal injury in this case is the resulting cancer,[7] the *Adams* complaint does not state for what personal injury Migliori was seeking relief. Thus, it is possible that in *Adams*, Migliori was not seeking relief for this radiation-induced cancer.

Thus, Boeing's argument relies upon a faulty factual premise. But even if Boeing could show that Migliori was seeking redress for his cancer in *Adams*, Boeing's argument would fail because it also relies upon a faulty legal premise.

#### b. The present case is based on a different cause of action than the Adams case.

Boeing points out that "the single most important factor in determining whether a single course of conduct has violated more than one primary right is whether plaintiff suffered injury to more than one interest." *See Los Angeles Branch NAACP,* 750 F.2d at 737. Boeing then jumps to the conclusion that the "injury suffered" means the "damages suffered." (*See* Defs.' Mot. at 3–4; Reply at 6.)

Injury, however, is not the same thing as damage for purposes of the primary rights theory. " 'Injury' is the invasion of [a] legally protected interest; it differs from 'harm' or tangible and material detriment in that there may be injury ... without any tangible harm." 5 Witkin Summ. of Cal.Law *Torts* § 3 (9th ed.1988) (citing Restatement 2d, Torts § 7). Thus, the injury is the violation of the legally protected interest, or "primary right," and not necessarily the resulting harm. *Cf. Slater v. Blackwood,* 15 Cal.3d at 795, 126 Cal.Rptr. 225, 543 P.2d 593 (stating that claim preclusion applies where the subsequent action is "based on the same injury to the same right").

The parties identify the primary right involved here: the right to be free from bodily injury. (Pls.' Opp. at 6, Defs.' Reply at 7.) However, probably because of its focus on the harm suffered, Boeing asserts that its multiple acts of exposing Migliori to carcinogenic substances constitute one violation of Migliori's primary right. The right to be free from bodily injury, however, does not work that way. Each act which invades the body qualifies as a separate cause of action. 4 Witkin Cal. Procedure *Pleading* § 40 (4th ed. 1997) ("Multiple causes may arise from successive separate wrongful acts of a single defendant injuring a single plaintiff").

Thus, the causes of action asserted in the present lawsuit are based on exposure suffered from Boeing's improper handling, use, and disposal of radioactive materials. The *Adams* complaint on its face would

---

7. The FAC appears to state that the cancer at issue is the type of cancer caused by radiation. (*See* FAC ¶ 29.)

seem to encompass those causes of actions. In that case, Migliori alleged causes of action based on exposure suffered from the improper use and disposal of toxic and hazardous substances. However, as part of the stipulation to file a second amended complaint in *Adams,* Migliori expressly excluded any causes of action based on exposure to radioactive materials. It is those causes of actions on which Migliori now seeks relief. Accordingly, the Court finds that *Adams* does not preclude M. Migliori's claims in this action.

### c. Boeing has failed to prove that I. Migliori's claim is precluded by Adams.

█ I. Migliori asserts a claim for loss of consortium. She also asserted a claim for loss of consortium in *Adams.* I. Migliori's claims present a closer issue than her husband's claims.

A primary right is generally equivalent to· a "plaintiff's right to be free from the particular injury suffered." *Slater,* 15 Cal.3d at 795, 126 Cal.Rptr. 225, 543 P.2d 593. Here, I. Migliori claims that she suffered loss of consortium. Thus, her primary right is her right to consortium, which includes "conjugal society, comfort, affection, and companionship" as well as "moral support." *Rodriguez v. Bethlehem Steel Corp.,* 12 Cal.3d 382, 405, 115 Cal. Rptr. 765, 525 P.2d 669 (1974). That primary right is violated where one's tortious conduct leads to an illness or other bodily harm that in turn results in the loss of consortium. *Id.* at 392, 115 Cal.Rptr. 765, 525 P.2d 669. It, therefore, appears that an injury to the right to consortium correlates to the harm suffered by the spouse.[8] However, from the complaints, it is unclear whether I. Migliori is seeking redress for distinct and different periods of loss of consortium or for loss of consortium due to specific illnesses. For instance, in the present action, she might be seeking relief for the loss of consortium during the nine-month period that her husband was in the

psychiatric ward during 1968. She might also be seeking loss of consortium based on the removal of the stem tumor in 1970. Finally, she might be seeking loss of consortium for the period since her husband developed cancer in 1994. It is unclear, however, whether these periods and injuries were the basis of the loss of consortium claim in the *Adams* complaint. Accordingly, the Court finds that, at this stage, Boeing has not met its burden of showing that I. Migliori's claims are precluded.

### C. Application of the Statute of Limitations.

#### 1. *McKelvey* does not preclude Plaintiffs from asserting that their claims are not time-barred.

In *McKelvey,* the California Court of Appeals ruled that the claims asserted by plaintiffs, including the Miglioris, were time-barred. *See McKelvey,* 74 Cal. App.4th at 161, 86 Cal.Rptr.2d 645. Boeing asserts that this ruling precludes the Miglioris from arguing that the present claims are timely because "the statute of limitations issue on plaintiffs' personal injury and loss of consortium claims has already been decided against them." (Defs.' Mot. at 6.) Thus, Boeing again relies on its argument that the injuries asserted here were also asserted in the previous litigation. As described above, the Court has found that the injuries are not one and the same. Thus, issue preclusion does not apply. *See* 7 Witkin Cal. Procedure *Judgment* § 355 (4th ed.1997) (party asserting defense has burden of establishing identity of issue for application of issue preclusion).

#### 2. Plaintiffs' allegations are sufficient to invoke the discovery rule.

Boeing also asserts that the Miglioris' claims are barred by the statute of limitations because they fail to allege facts to

---

**8.** The Court notes that the parties do not address in any meaningful manner the application of the primary right theory to the loss of consortium claim.

invoke the discovery rule. The Court disagrees.

■ Under the statute of limitations, a plaintiff must bring a cause of action within the applicable limitations period after accrual of the cause of action. *Norgart v. Upjohn Co.,* 21 Cal.4th 383, 397, 87 Cal. Rptr.2d 453, 981 P.2d 79 (1999). Claims brought after the expiration of the limitations period are generally barred. A claim accrues upon the occurrence of the last element necessary to complete the claim. *Id.* The claim accrues under this traditional rule "even if the plaintiff is unaware of [the] cause of action." *Mangini v. Aerojet–General Corp.,* 230 Cal.App.3d 1125, 1149–50, 281 Cal.Rptr. 827 (1991).

■ An exception to the traditional rule of accrual is the discovery rule. *Norgart,* 21 Cal.4th at 397, 87 Cal.Rptr.2d 453, 981 P.2d 79. The discovery rule postpones accrual of a claim until "plaintiff discovers, or has reason to discover, the cause of action." *Id.* A plaintiff discovers the claim when he or she at least suspects an injury that was caused by wrongdoing. *Id.; Jolly v. Eli Lilly & Co.,* 44 Cal.3d 1103, 1109–11, 245 Cal.Rptr. 658, 751 P.2d 923 (1988).

■ A person has reason to suspect an injury and wrongdoing where he or she has "notice or information of circumstances to put a reasonable person *on inquiry.*" *Jolly,* 44 Cal.3d at 1110–11, 245 Cal.Rptr. 658, 751 P.2d 923 (internal quotations omitted; emphasis in original). A plaintiff is "held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her." *Id.* at 1109, 245 Cal.Rptr. 658, 751 P.2d 923. "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim." *Id.* at 1111, 245 Cal.Rptr. 658, 751 P.2d 923. "So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Id.*

■ Once a defendant shows that the action is barred under the traditional rule, a plaintiff has the burden of showing that the discovery rule applies. *McKelvey,* 74 Cal.App.4th at 160, n. 11, 86 Cal. Rptr.2d 645; *Samuels v. Mix,* 22 Cal.4th 1, 10, 91 Cal.Rptr.2d 273, 989 P.2d 701 (1999). To successfully rely on the discovery rule, a plaintiff must plead and prove "(a) lack of knowledge; (b) lack of a means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date); [and] (c) how and when he did actually discover the [claim]." *McKelvey,* 74 Cal.App.4th at 160 n. 11, 86 Cal.Rptr.2d 645 (quoting 3 Witkin Cal. Procedure *Actions* § 602 (4th ed.1996)).

The applicable limitations period for all of the Migliori's claims is one-year. *See* Cal.Civ.Proc.Code § 340(3). The Miglioris seek relief for an injury that was diagnosed in 1994. Clearly, under the traditional rule, the Miglioris' claims are time-barred. The Miglioris, however, assert that their allegations are sufficient to invoke the protections of the discovery rule. The Court agrees.

### a. Plaintiffs allege lack of knowledge, means of discovery, and lacks of a means of knowledge.

■ The Miglioris allege that "Plaintiff first became aware that he may have sustained injuries as a result of his exposure to ionizing radiation from the conduct of Defendants when defendants' [sic] notified him on September 15, 1998 that defendants were opening a workers' compensation claim relative to plaintiff's cancer." (FAC ¶ 32.) That allegation clearly shows how (Boeing's notification that it was opening a workers' compensation claim related to the radiation-induced cancer) and when (September 15, 1998) the Miglioris discovered their claim.[9] *See McKelvey,* 74 Cal. App.4th at 160 n. 11, 86 Cal.Rptr.2d 645.

9. In its reply, Boeing points out that the Miglioris alleged in *Adams* that they were aware of a 1997 UCLA study about radiation exposure suffered by Boeing employees. (Defs.' Reply at 12.) Boeing argues that the allegation is a judicial admission that is binding on

 The Miglioris also allege throughout the FAC that "Plaintiff was ignorant of the risks involved," (FAC ¶¶ 24, 25; *accord* FAC ¶¶ 28), that information about the exposure to radiation was not disclosed to Migliori, (FAC ¶¶ 27, 29, 30b, 31), and that he was actually informed that he had not suffered excessive exposure to radiation, (FAC ¶ 27). The Miglioris' allegations sufficiently plead a lack of knowledge.

To show that they lack the means of obtaining knowledge, the Miglioris rely on their allegations that (1) Boeing did not disclose information to M. Migliori, even though it was aware that Migliori was ill and (2) Boeing informed Migliori that he had not been exposed to excessive levels of radiation. (*See* Pls.' Opp. at 13–14.) Boeing, relying on *McKelvey*, asserts that these "boilerplate" allegations are insufficient to invoke the discovery rule.

*McKelvey* did find that "conclusory allegations of Boeing's 'massive cover-up'" were insufficient to "show [an] ... inability to have made earlier discovery despite reasonable diligence." *McKelvey,* 74 Cal. App.4th at 161, 86 Cal.Rptr.2d 645. Those allegations were insufficient because the *McKelvey* plaintiffs had alleged in their complaints that public notices and newspaper articles had been published without alleging how they were unaware of those publications. *Id.* Indeed, the *McKelvey* court pointed out that the plaintiffs had not even alleged "that they did not read, hear or see the articles and broadcasts they admit were published." *Id.*

Here, the Miglioris' allegations do not refer to any newspaper articles or notices. Although they rely on reports and information which existed years ago, the Miglioris allege that Boeing controlled that information and did not disclose it to them

until June 1999. Moreover, the Miglioris assert that Boeing actually assured M. Migliori that he was not exposed to excessive levels of radiation. Their allegations, therefore, are sufficient to show that they did not have the means of obtaining awareness of their claims.

*b. Plaintiffs are not required to explain how they failed to learn of the materials submitted by Defendants at this stage of the litigation.*

 Boeing also asserts that the FAC's allegations are insufficient because the Miglioris do not address the "barrage of media reports and widely disseminated agency reports." (Defs.' Mot. at 8.) The Court does not believe that a plaintiff is required to (1) anticipate that a defendant will challenge a claim by reference to media articles; (2) conduct a preemptive search of the media to locate any articles that may have aroused a reasonable person's suspicions about the claim; and (3) turn the complaint into a declaration-like document which states that he or she did not read any of the articles identified nor had the means of learning of those articles. Moreover, the determination of whether a plaintiff will be imputed with knowledge of widespread publicity requires the Court to undertake a detailed factual analysis of the circumstances. Thus, the Court sees no value in forcing the Miglioris to amend their complaint so that they can allege that they did not see and could not be expected to see each of the articles identified by Boeing.

Putting aside the question of whether the Court would need to first determine which of the hundreds of articles identified by Boeing would have made a reasonable person in the shoes of M. Migliori suspect that Boeing's conduct was the cause of his

---

the Miglioris and establishes that their claims are barred. However, the pleadings from a prior litigation can be used as evidence but are not judicial admissions binding upon the litigants in a different litigation. 31 M. Graham, Federal Practice and Procedure: *Evidence* § 6726 (interim ed.1997); *see also Dugan v. EMS Helicopters, Inc.* 915 F.2d 1428,

1432 (10th Cir.1990); *Williams v. Union Carbide Corp.,* 790 F.2d 552, 556 (6th Cir.1986); *cf. Totten v. Merkle,* 137 F.3d 1172, 1176 (9th Cir.1998) (noting that a statement made by one's attorney qualifies as a party admission under Fed.R.Evid. 801(d)(2)). Thus, Boeing merely points to evidence that can be used at trial to counter Plaintiffs' allegations.

or her cancer, such an exercise would seem to defeat the purpose of Fed.R.Civ.P. 8(a) and 8(e). In short, unless the content or existence of a news article, a report or a notice is alleged in the complaint, the Court finds that a plaintiff need not explain in the complaint how he or she failed to learn the contents of such an article, report, or notice at an earlier time.

### 3. Widespread publicity by itself does not, as a matter of law, establish that Plaintiffs' claims are time-barred.

■ Boeing argues that the widespread publicity about the "harmful effects of contamination from the Boeing sites" should be imputed to the Miglioris. Because this publicity was disseminated prior to 1998, Boeing argues that knowledge of that publicity bars this present lawsuit. As a demonstration of this publicity, Boeing has submitted "over 150 ... public agent and news reports." (Defs.' Mot. at 10.) Boeing, however, misconstrues the role of publicity in application of the discovery rule. Where publicity and information concerning an issue are generally available, the Court may impute knowledge of that information to a plaintiff. The mere fact of publicity, however, does not conclusively show that a plaintiff must be imputed with knowledge.

■ The determination of whether a reasonable person would have discovered the information depends on various factors. The quality and quantity of the information or publicity are factors. *See Hopkins v. Dow Corning Corp.,* 33 F.3d 1116, 1123 (9th Cir.1994) (holding that imputing knowledge was not appropriate where article and other lawsuits "were neither numerous nor notorious enough"). Additionally, the characteristics of the plaintiffs should also be considered. *See Bibeau v. Pacific Northwest Research Foundation Corp.,* 188 F.3d 1105, 1110 (9th Cir.1999) (refusing to impute knowl-

edge of widespread publicity because reasonable person in plaintiffs' shoes might not have known about publicity); *Stutz Motor Car of America, Inc. v. Reebok International, Ltd.,* 909 F.Supp. 1353, 1362 (C.D.Cal.1995) (imputing knowledge of widely publicized shoe sale campaign where defendants were involved in footwear industry); *In re Burbank Environmental Litigation,* 42 F.Supp.2d 976, 982 (C.D.Cal.1998) (imputing knowledge of widespread news reports of environmental contamination where neighbors were concerned about contamination and its effects at the time of the publicity and subscribed to the papers printing the reports); *In re Beef Industry Antitrust Litigation,* 600 F.2d 1148, 1170 (5th Cir.1979) (imputing knowledge of publicity that was widely circulated in beef industry publications where plaintiffs were involved in industry).

Here, Boeing presents the Court with more than 150 articles and reports from 1989 onward. Assuming that this quantity of articles constitutes the "voluminous" amount that Boeing believes it does, Boeing fails to identify which are front page articles, how long and how often the television and radio segments ran, or the circulation or viewership of the newspapers and stations that carried the information. In short, Boeing makes no effort to describe the notoriety or prominence of this information. Moreover, the Court doubts that Boeing could establish this information by relying exclusively on judicially-noticed material.[10]

Additionally, even if the Court were to take judicial notice of and review each of the 150 articles presented by Boeing, the Court would still not be able to resolve this issue. The Court must consider some of the characteristics of the Miglioris. While the burden of demonstrating that they were reasonably unaware of the publicity falls on the Miglioris, such a determination is best left to a proceeding where both

---

10. Indeed, Boeing's exhibits presently include media reports about broadcast media seg-

ments. The Court could not take judicial notice of these reports under Fed.R.Evid. 201.

sides can present evidence on the issue. A motion to dismiss, which merely tests the sufficiency of the complaint, is not the appropriate vehicle for this factual determination.

### D. Application of Workers' Compensation Act.

The Workers' Compensation Act is "the sole and exclusive remedy of the employee or his or her dependents against the employer" for employment related injuries. Cal. Labor Code § 3602(a). Boeing asserts that the Miglioris' claims are barred by the Workers' Compensation Act. The Miglioris counter that the "fraudulent concealment" exception to the Workers' Compensation Act applies. Under that exception, a plaintiff may bring a claim outside the workers' compensation system "[w]here the employee's injury is aggravated by the employer's fraudulent concealment of the existence of the injury and its connection with the employment, in which case the employer's liability shall be limited to those damages proximately caused by the aggravation." Cal. Labor Code § 3602(b)(2).

■ The "fraudulent concealment" exception, however, does not allow a plaintiff to convert a workers' compensation claim into a tort claim. The exception only allows recovery for the aggravation of the personal injury caused by the concealment. Recovery for damages "from contracting the disease in the first instance" can only be obtained through the workers' compensation program. *Foster v. Xerox Corp.*, 40 Cal.3d 306, 310, 219 Cal.Rptr. 485, 707 P.2d 858 (1985).

■ Here, M. Migliori attempts to recover for contracting his ailments in the first instance under his negligence and negligence per se claims. Fraudulent concealment, by definition, requires an intent to conceal information known by the employer. *See, e.g., Johns–Manville Prods. Corp. v. Superior Court*, 27 Cal.3d 465, 478–79, 165 Cal.Rptr. 858, 612 P.2d 948 (1980). However, to recover under either the negligence or negligence per se claims, the Miglioris would not have to prove either intent or knowledge. Accordingly, the Miglioris' first and second claims for relief are DISMISSED without leave to amend.

■ The claims for loss of consortium and intentional infliction of emotional distress may state claims for relief to the extent that these damages are simply aggravations of the underlying injury. Moreover, the Miglioris sufficiently allege that Boeing concealed information about the cause of M. Migliori's injury and that it had knowledge of his injury. (FAC ¶¶ 27, 29, 30b, 30c, 49, 58.) These allegations are sufficient to assert a claim for fraudulent concealment. Accordingly, as to the Miglioris' third, fourth, and sixth claims, Boeing's Motion is DENIED.

### E. The Civil Conspiracy Claim for Relief is Proper.

■ "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510–11, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994). Relying on this statement from *Applied Equipment*, Boeing argues that the Migliori's conspiracy claim is deficient as a matter of law. However, directly following that sentence in *Applied Equipment*, the California Supreme Court stated:

> By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors.

*Id.* at 511, 28 Cal.Rptr.2d 475, 869 P.2d 454 (citation omitted). Thus, under California law, the Miglioris can seek to impose liability on the various Defendants involved

herein even if a specific Defendant is not the immediate tortfeasor. The Miglioris' FAC, therefore, asserts their intent to rely on the civil conspiracy theory to impose liability on the Defendants. Whether classified as a "true" cause of action or not, the Miglioris are clearly entitled to rely on the "civil conspiracy" legal theory to establish liability. Thus, the Court DENIES Boeing's Motion as to the Miglioris' fifth claim for relief.

### IV. Conclusion

The Court DISMISSES without leave to amend Plaintiffs' negligence claims asserted in the FAC's first and second claim for relief. In all other respects, the Court DENIES Defendants' motion.

**SO ORDERED.**