**Adelaide ANDREWS, Plaintiff–Appellant,**

v.

**TRW INC., Defendant–Appellee.**

No. 98–56624.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 3, 2000

Filed July 17, 2000

As Amended Oct. 4, 2000

Carlyle W. Hall, Jr., Andrew R. Henderson, Hall & Henderson, LLP, Los Angeles, California, Jilana L. Miller, Laura N. Diamond, Center for Law in the Public Interest, Los Angeles, California, Gerald L. Sauer, Sauer and Wagner, LLP, Los Angeles, California, for the plaintiff-appellant.

Daniel J. McLoon, Kevin R. Lussier, Eugenia L. Castruccio, Jones, Day, Reavis & Pogue, Los Angeles, California, for the defendant-appellee.

Michael O'Neil, Rudnick and Wolfe, Chicago, IL, for the amicus.

Before: CANBY, NOONAN, and W. FLETCHER, Circuit Judges.

NOONAN, Circuit Judge:

Adelaide Andrews (Andrews) appeals the judgment by the district court in her suit against TRW, Inc. The case involves the rights under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681u (1994 & Supp. II) (FCRA), and Cal. Bus. & Prof. Code § 17200 et. seq. (1996), of a person claiming to be damaged by the disclosure of inaccurate credit information by a consumer credit reporting agency such as TRW.

We hold that Andrews's suit was not barred by § 1681p. We further hold that it was not a question of law but a question to be resolved by the jury as to whether TRW had reason to believe that it was furnishing information in connection with a consumer transaction involving Andrews. For these reasons we reverse the partial summary judgments awarded TRW on the first of Andrews's claims. As to the claims that did go to trial and ended in judgment against her after trial, we find no harmful error and affirm.

## FACTS

In June 1993, Andrea Andrews (hereafter the Imposter) obtained the social secu-

rity number and California driver's license number of Adelaide Andrews (hereafter the Plaintiff). The Imposter did so simply by misusing her position as a doctor's receptionist and copying the information that the Plaintiff, as a patient in that office, supplied to the doctor.

In 1994–1995 the Imposter applied for credit to four companies subscribing to TRW's credit reports. For example, on July 25, 1994, to First Consumers National Bank (FCNB), the Imposter applied as Andrea A. Andrews, 3993–1/2 Harvard Blvd., Los Angeles, CA, 90062, phone 213–312–0605, employed at Spensor Robbyns Products, Los Angeles. The Imposter gave the birth date and social security number of the Plaintiff.

In this application the only misinformation was the Imposter's use of the Plaintiff's social security number and date of birth. On October 28, 1994 to Express Department Stores the Imposter made a comparable credit application, using her own identity except for the Plaintiff's social security number. Again, in January 1995, to Commercial Credit the Imposter applied for credit, using her own identity, except for Plaintiff's social security number and a clumsy misspelling of her first name as "Adeliade."

TRW responded to the credit inquiries of the three companies by treating the applications as made by the Plaintiff. TRW furnished the information in its file on the Plaintiff and added the three inquiries to the Plaintiff's file.

Each of the credit applications applied for by the Imposter was turned down by the company getting the TRW report. In addition, the Imposter applied for cable service to a public utility, Prime Cable of Las Vegas, which was required by law to provide cable services but nonetheless asked for a TRW report. The Imposter applied as Andrea Andrews, 4201 S. Decatur # 2202, Las Vegas, NV, 89103, Phone 248–6352. The Imposter used the social security number of the Plaintiff, which was the only stolen item of identity provided.

This account became delinquent and was referred to a collection agency.

The Plaintiff, however, became aware of the Imposter only on May 31, 1995 when she sought to refinance the mortgage on her home. The bank from which the financing was sought received a report from Chase Credit Research, not a party to this case, whose report combined information from TRW and two other credit reporting agencies. Now aware of the fraud, Andrews contacted TRW and requested deletion from her file of all reference to the Imposter's fraudulent activities. TRW complied.

## PROCEEDINGS

On October 21, 1996, the Plaintiff filed this suit in the district court. In her first claim she alleged that TRW had furnished credit reports without "reasonable grounds for believing" that she was the consumer whom the credit applications involved, contrary to 15 U.S.C. §§ 1681b and 1681e(a), and that as a consequence she had suffered damages including an expenditure of time and money and "commercial impairment, inconvenience, embarrassment, humiliation, and emotional distress including physical manifestations." In her second claim, she alleged that TRW had violated § 1681e by not maintaining the "reasonable procedures" required by that statute in order "to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). She alleged the same damages. She asserted that both violations were willful and that both also violated Cal. Bus. & Prof.Code § 17200 et. seq. She sought actual and punitive damages and an injunction requiring TRW to comply with the Fair Credit Reporting Act by "requiring a sufficient number of corresponding points of reference" before disseminating an individual's credit history or attributing information to an individual's credit file.

On May 28, 1998, the district court granted partial summary judgment to TRW. The court held that the two year statute of limitations provided by § 1681p

began to run at the time the alleged wrongful disclosures of credit information were made to the requesting companies. By this test the complaint was too late as to the disclosures made to FCNB and to Prime Cable. As to the disclosures made to Express and Commercial, the court ruled that they were made for a purpose permissible under § 1681b(a)(3)(A), because the Plaintiff, even against her will, was "involved" in the credit transaction initiated by the Imposter. Any other rule, the court said, would place "too heavy a burden on credit reporting agencies." In addition, the court ruled that TRW had used the "reasonable procedures" required by § 1681e(a) to limit disclosures to permissible purposes. For these several reasons, the court granted summary judgment to TRW on the Plaintiff's first claim.

The court also struck Plaintiff's claim for punitive damages on both her first and second causes of action. The court ruled that the Plaintiff had produced no evidence of TRW's conscious disregard of reasonable procedures. In so ruling, the court did not consider the testimony of Dr. Douglas Stott Parker, the Plaintiff's expert on computers or the testimony of Evan Hendricks, the Plaintiff's expert on the prevalence of identity theft.

TRW then moved in limine to bar from testifying at trial the Plaintiff's witness Douglas Stott Parker, offered as an expert on the Plaintiff's second claim that TRW's procedures were not reasonable in assuring maximum possible accuracy. Relying in part on its earlier rulings, the district court ordered that Parker not testify as to procedures leading to inaccuracy in TRW disclosing the Plaintiff's information upon the Impostor's applications.

The case proceeded to trial on the Plaintiff's second and third claims. The jury returned a verdict for TRW. The Plaintiff appeals the consequent judgment on all her claims.

## ANALYSIS

■ The Statute of Limitations. Liability under the statute arises when a consumer reporting agency fails to comply with § 1681e. *Guimond v. Trans Union Credit Information Co.*, 45 F.3d 1329 (9th Cir.1995). The question is presented whether Andrews's claims are barred as to those alleged failures to comply which occurred before October 21, 1994. 15 U.S.C. § 1681p reads:

An action to enforce any liability created under this title may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within two years from the date on which the liability arises, except that where a defendant has materially and willfully misrepresented any information required under this subchapter to be disclosed to an individual and the information so misrepresented is material to the establishment of the defendant's liability to that individual under this title, the action may be brought at any time within two years after discovery by the individual of the misrepresentation.

■ The general federal rule is that a federal statute of limitations begins to run when a party knows or has reason to know that she was injured. *Norman–Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1266 (9th Cir.1998). By this test none of the Plaintiff's injuries were stale when suit was brought.

The district court relied on what it saw as the implication of the statute explicitly referencing a discovery time limit where a defendant had wilfully misrepresented information "required to be disclosed to an individual." The creation of this exception, the court reasoned, implied an exclusion of a general discovery rule. *Accord, Rylewicz v. Beaton Services, Ltd.*, 888 F.2d 1175 (7th Cir.1989); *Houghton v. Insurance Crime Prevention Inst.*, 795 F.2d 322 (3d Cir.1986); *Clay v. Equifax, Inc.*, 762 F.2d 952, 961 (11th Cir.1985). It is argued, to the contrary, that neither the language of the statute nor its interpretation by other

respected circuit courts of appeals is a warrant for disregarding the teaching of the Supreme Court: unless Congress has expressly legislated otherwise, the equitable doctrine of discovery "is read into every federal statute of limitations." *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946); *see also Lampf v. Gilbertson,* 501 U.S. 350, 363, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). We have followed this approach in interpreting an analogous statute. *See Englerius v. Veterans Admin.,* 837 F.2d 895, 898 (9th Cir.1988). We are not persuaded to depart from the general rule or the analogy. Andrews's claims were not barred.

■ Disclosure Without Reasonable Belief. Under § 1681b TRW could only furnish a report on a consumer to a customer which it had "reason to believe" intended to use the information in connection with "a credit transaction involving the consumer on whom the information is to be furnished." 15 U.S.C. § 1681b(a)(3). Did TRW have a reasonable belief that the Plaintiff was the consumer involved in the credit transactions as to which the four companies sought a report from TRW? As the district court observed, there are 250,000,000 persons in the United States (not all of them having Social Security numbers) and 1,000,000,000 possibilities as to what any one Social Security number may be. The random chance of anyone matching a name to a number is very small. If TRW could assume that only such chance matching would occur, it was reasonable as a matter of law in releasing the Plaintiff's file when an application matched her last name and the number. But we do not live in a world in which such matches are made only by chance.

■ We take judicial notice that in many ways persons are required to make their social security numbers available so that they are no longer private or confidential but open to scrutiny and copying. Not least of these ways is on applications for credit, as TRW had reason to know. In a world where names are disseminated with the numbers attached and dishonest persons exist, the matching of a name to a number is not a random matter. It is quintessentially a job for a jury to decide whether identity theft has been common enough for it to be reasonable for a credit reporting agency to disclose credit information merely because a last name matches a social security number on file.

In making that determination the jury would be helped by expert opinion on the prevalence of identity theft, as the district court would have been helped if it had given consideration to the Plaintiff's witnesses on this point before giving summary judgment.

The reasonableness of TRW's responses should also have been assessed by a jury with reference to the information TRW had indicating that the Imposter was not the Plaintiff. TRW argues that people do use nicknames and change addresses. But how many people misspell their first name? How many people mistake their date of birth? No rule of law answers these questions. A jury will have to say how reasonable a belief is that let a social security number trump all evidence of dissimilarity between the Plaintiff and the Imposter.

■ The district court held that the Plaintiff was involved in the transaction because her number was used. The statutory phrase is "a credit transaction involving the consumer." 15 U.S.C. § 1681b(a)(3)(A). "Involve" has two dictionary meanings that are relevant: (1) "to draw in as a participant" or (2) "to oblige to become associated." The district court understood the word in the second sense. We are reluctant to conclude that Congress meant to harness any consumer to any transaction where any crook chose to use his or her number. The first meaning of the statutory term must be preferred here. In that sense the Plaintiff was not involved.

Another consideration for the district court was that a different rule would impose too heavy a cost on TRW. The statute, however, has already made the determination as to what is a bearable cost for a

credit reporting agency. The cost is what it takes to have a reasonable belief. In this case that belief needed determination by a jury not a judge.

We reinstate the Plaintiff's first claim together with her request for punitive damages based upon it.

■ Reasonable Procedures To Assure Accuracy. The statutory command is clear: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C § 1681e(b). It would normally not be easy for a court as a matter of law to determine whether a given procedure was reasonable in reaching the very high standard set by the statute as to each individual reported upon. "The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases." *Guimond,* 45 F.3d at 1333. The expert testimony to be offered by Dr. Parker on "automated procedures for connecting and resolving inaccuracies in credit reports" was germane to a jury determination of this question.

The district court ruled that it was already the law of the case, as a result of its summary judgment rulings, that it was permissible for TRW to disclose the Plaintiff's file after an application by the Imposter. In ruling on what Dr. Parker could testify to, the district court expanded that ruling to include the permissibility of TRW disclosing the Imposter's file when the Plaintiff applied for credit. On the basis of this expanded position, the district court ruled that Dr. Parker could not testify as to the availability of computer software that could have kept the Imposter's data and the Plaintiff's data from being merged in a TRW report. As we have already held, it was not a question of law for the court to decide whether TRW had a reasonable belief permitting disclosure. The court's legal error infected its ruling on the scope of Dr. Parker's testimony.

Despite its in limine ruling, the district court permitted Andrews to examine Dr. Parker on the basis of a TRW report to Strategic Mortgage Services made on June 5, 1995. This report attributed to the Plaintiff the Dillard's account opened by the Imposter. Dr. Parker testified that TRW could have had in place "an integrity restraint" that would have prevented this error. He described an integrity restraint as a watchdog that would have looked for problems or anomalies of the kind that TRW failed to detect with the result that the Imposter's applications to FCNB, Express, and Commercial Credit, and her Prime Cable connection were attributed to the Plaintiff. Dr. Parker testified that such integrity restraints were available in the relevant period, 1994–1996. In the light of this testimony it is difficult to conclude that the Plaintiff was harmed at trial by the court's initial ruling.

*Conclusion:* Judgment on Plaintiff's first cause of action and the state law claim is REVERSED and the case is REMANDED for trial. Judgment on Plaintiff's second cause of action is AFFIRMED. Each party should bear its own costs.