Lawrence O'CONNOR, et al., Plaintiffs,

v.

BOEING NORTH AMERICAN, INC. and Rockwell International Corporation, Defendants.

No. CV 97–1554 ABC RCX.

United States District Court, C.D. California.

Oct. 10, 2000.

A. Cappello, J. Gignac, Kim Seefeld, Cappello & McCann, Santa Barbara, CA, for Plaintiff.

John Reding, William Schofield, Barry Endick, Paul, Hastings, Hanofsky & Walker, San Francisco, CA, for Defendant.

## ORDER GRANTING DEFENDANTS' MOTION FOR DECERTIFICATION AND DENYING PLAINTIFFS' MOTION TO INTERVENE ADDITIONAL CLASS REPRESENTATIVES

COLLINS, District Judge.

Defendants' Motion for Decertification of Classes and Plaintiffs' Motion to Intervene New Class Representatives came on regularly for hearing before this Court on July 10, 2000. After considering the materials pre-

sented by the parties, the argument of counsel, and the case file, the Court concludes that maintaining a class action is inappropriate. Accordingly, the Court GRANTS Defendants' motion and DENIES Plaintiffs' motion.

## I. Factual and Procedural Background

The Court has previously recited the factual background in this case at length. *See O'Connor v. Boeing North American, Inc.,* 92 F.Supp.2d 1026 (C.D.Cal.2000) (*"O'Connor SJM"*); *O'Connor v. Boeing North American, Inc.,* 180 F.R.D. 359 (C.D.Cal.1997) (*"O'Connor I"*). The Court, therefore, will not reiterate here the factual background causing this litigation. Similarly, the Court has described the procedural background in this case recently in *O'Connor SJM.* For purposes of this motion, a brief review suffices.

### A. Previous Certification Motions.

These motions comprise the third time that the Court has considered the viability of class treatment under Rule 23 of the Federal Rules of Civil Procedure. In October 1997, the Court found that Plaintiffs had failed to show that class treatment was appropriate. Accordingly, the Court denied Plaintiffs' motion to certify. *See O'Connor I,* 180 F.R.D. at 384

Six months later, in April 1998, Plaintiffs filed a second motion to certify. *See O'Connor v. Boeing North American, Inc.,* 184 F.R.D. 311 (C.D.Cal.1998) (*"O'Connor II"*). At that time, Plaintiffs addressed the various deficiencies that the Court had identified in *O'Connor I.* Therefore, in July 1998, the Court conditionally certified three classes. *O'Connor II,* 184 F.R.D. at 342. The three classes were defined as follows:

Class I: All persons (1) presently residing or working within the Class Area or who have resided or worked in the Class Area at any time since 1946, and (2) who have not been diagnosed with certain serious illnesses.

Class II: All persons who own real property located within the Class Area.

Class III: All persons presently residing or working within the Class Area or who own real property located within the Class Area.

Harold and Joyce Samuels currently represent Class I. Lawrence O'Connor, Margaret O'Connor, Mary Jane Vroman, Robert Grandinetti, Donald Reed, and William Rueger represent Class II and Class III.

Class I asserts various claims ultimately seeking (1) declaratory relief that "Defendants' discharge of radioactive contaminants and/or hazardous, non-radioactive substances into the environment from the Rocketdyne Facilities is unlawful and violates both federal and state law"; and (2) "the establishment of a comprehensive, court-supervised program of medical monitoring designed to ensure the early detection of any latent diseases, illnesses and/or other health problems for members of Class I who, as a result of their exposure to the radioactive contaminants and/or hazardous, non-radioactive substances released into the environment form the Rocketdyne Facilities, have an increased risk of such health problems." (Fourth Amended Complaint ("FoAC") at 67:15–25.)

Class II asserts various claims seeking injunctive relief and damages based on injury to property.

Class III asserts two claims. First, it seeks response costs and damages under the Comprehensive Environmental Response Compensation Liability Act, 42 U.S.C. § 9659 ("CERCLA"). Second, under California's Unfair Business Practices Act, Cal. Bus. & Prof.Code § 17200, the Class seeks injunctive relief requiring Boeing to disclose information, refrain from discharging toxic substances, and clean up the contamination it has caused. (FoAC at 68:7–14.) [1]

### B. Defendants' Summary Judgment Motion.

At the end of December 1999, Defendants filed a motion seeking summary judgment on

---

1. This is the same injunctive relief sought for the Class II claims. The Court notes that on September 16, 1998, Plaintiffs stipulated to strike a request for disgorgement of profits under the § 17200 claim.

(1) most personal injury and wrongful death claims; (2) all Class I and Class III claims; and (3) all Class II claims except the continuing trespass and nuisance claims. *O'Connor SJM*, 92 F.Supp.2d at 1028. The Court granted summary judgment as to some individual claims and denied it as to others. In determining whether an individual's claim was time-barred, the Court considered various individual characteristics. *See id.* at 1039–50.

In contrast, the Court denied summary judgment on the class claims. However, the Court substantially limited the claims asserted by the class representatives. After reviewing the individual factors affecting the Samuels, the Court found that they could recover on their Class I claims only for any exposure that occurred after 1991. *O'Connor SJM*, 92 F.Supp.2d at 1053. The other representatives could recover on their Class II and Class III claims only to the extent that they were injured within the statute of limitations. *Id.* None of the Class II and III representatives could rely on the "discovery" rule.[2] *See id.*

## C. Present Motions.

In light of the Court's summary judgment rulings and the highly individualistic nature of the statute of limitations analysis, the

Court voiced concerns about the continued viability of the class claims. *Id.* at 1054. Defendants responded to the Court's concerns by filing a motion to decertify the classes. Plaintiffs oppose Defendants' request.

Moreover, Plaintiffs filed a motion to intervene seeking to introduce new class representatives who purportedly would not be limited under the Court's summary judgment analysis. Defendants oppose Plaintiffs' efforts.[3]

## II. Analysis

### A. Standard on Motion to Decertify.

■ A district court's decision to decertify a class is committed to its sound discretion. *See Knight v. Kenai Peninsula Borough School Dist.*, 131 F.3d 807, 816 (9th Cir.1997). Nevertheless, a district court "must conduct a 'rigorous analysis' into whether the prerequisites of Rule 23 are met." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) (citing *In re American Medical Sys.*, 75 F.3d 1069 (6th Cir.1996)).

Once a class is certified, "the parties can be expected to rely on it and conduct discovery, prepare for trial, and engage in settlement discussions on the assumption that in the normal course of events it will

---

**2.** The discovery rule is an exception to the traditional rule of accrual for purposes of the statute of limitations. *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397, 87 Cal.Rptr.2d 453, 981 P.2d 79 (1999). Under the statute of limitations, a plaintiff must bring a cause of action within the applicable limitations period after accrual of the cause of action. *Id.* Claims brought after the expiration of the limitations period are generally barred.

Under the traditional rule, a claim accrues upon the occurrence of the last element necessary to complete the claim "even if the plaintiff is unaware of [the] cause of action." *Mangini v. Aerojet–General Corp.*, 230 Cal.App.3d 1125, 1149–50, 281 Cal.Rptr. 827 (1991); *Norgart*, 21 Cal.4th at 397, 87 Cal.Rptr.2d 453, 981 P.2d 79. The discovery rule postpones accrual of a claim until "plaintiff discovers, or has reason to discover, the cause of action." *Norgart*, 21 Cal.4th at 397, 87 Cal.Rptr.2d 453, 981 P.2d 79.

**3.** The Court held a hearing on the motion on July 10, 2000. At the hearing, the Court reiterated that the discovery rule did not apply to the § 17200 claim. *See O'Connor SJM*, 92

F.Supp.2d at 1053 n. 52; *Stutz Motor Car of America v. Reebok Internat'l, Ltd.*, 909 F.Supp. 1353, 1363 (C.D.Cal.1995). Thus, the individualized statute of limitations questions that affect the other claims did not directly affect the § 17200 claim.

After the hearing, Plaintiffs pointed out that Defendants' summary judgment motion was not directed at the Class II claims for continuing trespass, continuing private nuisance, continuing public nuisance, and continuing public nuisance *per se.* As with the § 17200 claim, the discovery rule does not apply to these claims. Therefore, the individualized statute of limitations questions also do not directly affect these Class II claims.

At the hearing, the Court expressed its intent to decertify those class claims that were directly affected by the limitations defense. However, before issuing an order partially decertifying the class, the Court believed that it was appropriate to determine the viability of continuing class treatment on the continuing trespass and nuisance claims and the § 17200 claim. Accordingly, the Court granted the parties leave to file additional briefing specifically addressing these claims.

not be altered except for good cause. Sometimes, however, developments in the litigation, such as the discovery of new facts or changes in the parties or in the substantive or procedural law, will necessitate reconsideration of the earlier order and the granting or denial of certification or redefinition of the class."

*Cook v. Rockwell Internt'l Corp.*, 181 F.R.D. 473 (D.Colo.1998). In this case, the Court's conditional certification placed the parties on notice that class certification might be subsequently reviewed. Indeed, the Court noted that "as the evidentiary record develops and dispositive motions are filed, the Court may sua sponte alter, amend, or vacate this certification Order at any time before a decision on the merits is made." *O'Connor II*, 184 F.R.D. at 342 n. 49 (citing Fed.R.Civ.P. 23(c)(1)).

■ The standard used by the courts in reviewing a motion to decertify is the same as the standard used in evaluating a motion to certify. This Court previously discussed the standard when it considered Plaintiffs' certification motions. *See O'Connor I*, 180 F.R.D. at 366–67; *O'Connor II*, 184 F.R.D. at 318–19. Plaintiff, however, raises a novel issue concerning the factors which the Court may consider in its review and determination of the motion.

Plaintiffs point out that the Court should not consider the merits of their claims or the likelihood of their success in proving those claims. *Accord O'Connor II*, 184 F.R.D. at 318. It follows, according to Plaintiffs, that the Court should disregard the statute of limitations defense in determining whether a class action is viable. The Court disagrees.

### 1. The Court can consider its summary judgment rulings.

■ Generally, a court should not consider the merits of a class claim in determining whether to certify a class. *Valentino*, 97 F.3d at 1232. The rule is a necessary corollary to Rule 23's admonition that class certification should be determined "as soon as practicable after the commencement of an action brought as a class action." Fed. R.Civ.P. 23(c)(1). Thus, "in determining whether to certify the class, [a] district court

is bound to take the substantive allegations of the complaint as true." *In re Coordinated Pretrial Proceedings in Petro. Prods. Antitrust Lit.* ("*Petro. Prods.*"), 691 F.2d 1335, 1342 (9th Cir.1982).

■ At the same time, the "no-merits" rule is not an inflexible rule. A court may look beyond the pleadings at the substantive claims of the parties to decide whether the elements of Rule 23 have been met. *See O'Connor II*, 184 F.R.D. at 318 and cases cited therein. Moreover, a court reviewing a certification motion is "required to consider the nature and range of proof necessary to establish [the] allegations" in the complaint. *Petro. Prods.*, 691 F.2d at 1342.

■ Finally, the "no-merits" rules cannot possibly mean that the Court must ignore its rulings and the case history. The Court has made legal and factual rulings that, absent good cause, will not change. It is apparent that the Court is free to rely on these rulings even though the rulings go to the merits of Plaintiffs' case. *Cf.* Fed.R.Civ.P. 23(c)(1) (indicating that certification order may be altered or amended before final decision); *O'Brien v. Sky Chefs, Inc.*, 670 F.2d 864 (9th Cir.1982) (affirming decertification where, after two and half years of discovery, plaintiffs had failed to present evidence supporting claims) *overruled on other grounds by Atonio v. Wards Cove Packing Co., Inc.*, 810 F.2d 1477 (9th Cir.1987).

### 2. The Court can consider the statute of limitations defense.

■ Plaintiffs also rely on cases in which courts refused to consider the limitations defense in a class certification evaluation. *See In re Nat'l Student Marketing Litig.*, 1981 WL 1617, 1981 U.S. Dist. Lexis 11650 (D.D.C.1981); *De Milia v. Cybernetics Internat'l Corp.*, 1972 WL 310, 1972 U.S. Dist. Lexis 14943 (S.D.N.Y.1972); *Cohen v. District of Columbia National Bank*, 59 F.R.D. 84 (D.D.C.1972); *Zeigler v. Gibralter Life Ins. Co. of America*, 43 F.R.D. 169 (D.S.D. 1967). None of these cases, however, establish a rule that limitations defenses cannot, or should not, be considered in a Court's

evaluation of class certification. Moreover, such a holding would be erroneous.

Some courts have denied class certification on the ground that the limitations defense made class treatment inappropriate. *See Barnes v. The American Tobacco Co.*, 161 F.3d 127, 149 (3d Cir.1998); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir.1998). Many other courts, including some of the courts in cases cited by Plaintiffs, have taken into consideration a limitations defense in evaluating a certification motion. *Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296–97 (1st Cir.2000); *Cook*, 181 F.R.D. at 480; *Lamb v. United Security Life Co.*, 59 F.R.D. 25 (S.D.Iowa 1972) (cited by Plaintiff); *Ungar v. Dunkin' Donuts of America, Inc.*, 68 F.R.D. 65 (E.D.Pa.1975) (cited by Plaintiff) *overruled by* 531 F.2d 1211 (3d Cir.1976); *accord In re Dalkon Shield IUD Products Liability Litigation*, 693 F.2d 847, 853 (9th Cir.1982) (noting that consideration of affirmative defenses such as statute of limitations should be considered in class certification determination). Thus, "statute-of-limitations defenses are appropriate for consideration in the class certification calculus." *Waste Management*, 208 F.3d at 295.

Accordingly, the Court is free to consider its previous summary judgment ruling and the limitations defense in evaluating the propriety of maintaining the classes.

## B. Changes since Certification Order.

Plaintiffs argue that nothing has changed since *O'Connor II* except that the Court ruled on the summary judgment motion and some additional certification opinions have been published. (*See* Pls.' Opp. at 8.) Although Plaintiffs may be technically correct, their argument severely underestimates the significant impact of the summary judgment order upon this litigation.

In its summary judgment order, the Court found that the Class II and III representatives had not properly pled the "discovery" rule. *O'Connor SJM*, 92 F.Supp.2d at 1053.

Thus, their claims were limited to conduct that occurred after March 1994 or March 1993, depending on the claim. The Court also found that the Samuels' Class I claims were limited to exposure that occurred after 1991. *Id.* Considering that the class claims seek relief based on injurious conduct that allegedly occurred as far back as 1946, the representatives' claims are substantially limited.

Additionally, in applying the statute of limitations to the Samuels and the many personal injury plaintiffs, the Court considered several factors that varied from individual to individual: (1) when and how each Plaintiff actually discovered his or her claims; (2) the newspaper readership of each Plaintiff; (3) the community group membership, or lack of it, of each Plaintiff; and (4) the residency history of each Plaintiff. *See O'Connor SJM*, 92 F.Supp.2d at 1040–50, 1053. Moreover, no one factor was determinative of the ultimate result. *See id.* at 1049 n. 45; 6/8/2000 Order Modifying Summ. Judg. Mot. at 2–4.

Plaintiffs appear to concede that the limitations defense raises individual issues.[4] (Pls.' Opp. at 25.) The real question is whether these individual issues make class treatment inappropriate.

## C. Class I Claims.

Class I was certified pursuant to Rule 23(b)(2). Rule 23(b)(2) provides that plaintiffs may maintain a class action if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Defendants argue that the Court should decertify the class because the class is not cohesive and no longer meets the Rule 23(a) requirements of typicality and adequacy.

### 1. The "cohesiveness" requirement.

■ Defendants assert that Rule 23(b)(2) has an implicit "cohesiveness" requirement that is similar, if not more stringent, than the predominance requirement of Rule 23(b)(3).[5]

---

**4.** Indeed, Plaintiffs argued during the summary judgment proceedings that the Court should have

considered additional individualized characteristics.

**5.** *See* § D.1. *infra* which deals with the require-

(Defs.' Mot. at 17–19.) In support of their position, Defendants cite to the decisions of various circuit courts. *See Barnes*, 161 F.3d at 143; *Lemon v. International Union of Oper. Eng'rs*, 216 F.3d 577, 580 (7th Cir. 2000); *Thomas v. Albright*, 139 F.3d 227, 235 (D.C.Cir.1998). As the Court previously held in *O'Connor II*, however, the Ninth Circuit has refused to read a "cohesiveness" requirement into Rule 23(b)(2). *O'Connor II*, 184 F.R.D. at 338 n. 40 (quoting *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir.1998)). In *Walters*, the Ninth Circuit stated:

> [W]ith respect to 23(b)(2) in particular, the [defendant's] dogged focus on the factual differences among the class members appears to demonstrate a fundamental misunderstanding of the rule. Although common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2). It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole.

*Walters*, 145 F.3d at 1047. Accordingly, for purposes of Rule 23(b)(2) certification, a class is cohesive if plaintiffs meet the requirements of Rule 23(a). *Cf. Amchem*, 521 U.S. at 626 n. 20, 117 S.Ct. 2231 (stating that Rule 23(a) requirements "serve as guideposts for determining" the interrelatedness of the plaintiff's claims and the class claims).

### 2. *Rule 23(a) requirements.*

A class must satisfy all the requirements of Rule 23(a). As part of these requirements, plaintiffs must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Additionally, plaintiffs must show that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4).

■ The typicality requirement of Rule 23(a)(3) does not require that the class representatives be identically situated with respect to all the other class members. *CRLA v. Legal Services Corp.*, 917 F.2d 1171, 1175 (9th Cir.1990); *O'Connor II*, 184 F.R.D. at 332. At the same time, the class representatives must " 'possess the same interest and

ments of Rule 23(b)(3).

suffer the same injury' as the class members." *General Tel. Co. v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir.1998) (en banc). Where the premise does not hold true, class treatment is inappropriate. *Id.; Broussard*, 155 F.3d at 340.

■ The adequacy of representation requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625, 117 S.Ct. 2231. As with the typicality requirement, plaintiffs generally meet the adequacy requirement where the representative's interests are comparable to those of the absent class members. William W Schwarzer, et al., *Federal Civil Procedure Before Trial* ¶ 10:347 (2000); *Amchem*, 521 U.S. at 626 n. 20, 117 S.Ct. 2231 (noting that adequacy and typicality requirement tend to merge).

Here, the summary judgment order has substantially restricted the Samuels' claims as compared with the relief sought on behalf of Class I members. In its certification order, the Court concluded, "Because Defendants have not *proven* that the Samuels' claims are time-barred and discovery has not concluded, the Court does not find that the Samuels' claims lack typicality based on the statute of limitations." *O'Connor II*, 184 F.R.D. at 333. Defendants have now proven that the limitations defense substantially limits the Samuels' recovery. Accordingly, the Court finds that Class I no longer meets the typicality and adequacy requirements.

Plaintiffs, however, argue that new representatives could sufficiently protect the interests of the class and satisfy the typicality and adequacy requirements of Rule 23(a). Putting aside the inadequacy of the Plaintiffs' present motion to intervene, *see* § G *infra*, the Court is not convinced that new representatives could salvage the class.

The Court previously recognized that "class certification is not defeated merely because 'facts fluctuate over the class period and vary as to individual claimants[.]'" *O'Connor II*, 184 F.R.D. at 331. At the same time, fluctuations in facts may reach a point such that maintaining a class action no longer provides for judicial economy or the fair determination of a controversy. It is abundantly clear to the Court that this litigation has reached that point. Defendants have shown that individual variances curtail Defendants' liability as to some class members. Moreover, these individual variances could require substantial litigation about whether, or to what extent, each of the class members could participate in the medical-monitoring program. Thus, given the individualized focus of the statute of limitations defense in this case, the Court finds that new class representatives would not satisfy the typicality requirement.[6]

Finally, although the Court noted that its certification order could be amended to restrict the claim to certain time periods,[7] Plaintiffs do not propose any amendment that could address the Court's concerns with the limitations defense. Accordingly, the Court finds that the only viable option at this time is the decertification of Class I.

## D. Class II and III Claims Subject to "Discovery" Rule.

Defendants sought summary judgment on all Class II and Class III claims except the continuing nuisance and trespass claims. By definition, the continuing claims are not subject to the discovery rule. On a continuing claim, a plaintiff can only recover for the injury suffered within the last three years. Similarly, the Court found that the discovery rule did not apply to § 17200 claims. Because of this difference, the Court first addresses the claims subject to the discovery rule. The continuing trespass, continuing

nuisance, and § 17200 claims are addressed in the next sections.

### 1. Rule 23(b)(3) requirements.

The Court certified both Class II and Class III under Rule 23(b)(3). Under Rule 23(b)(3), an "action may be maintained as a class action" only if "questions of law or fact common to the members of the class predominate, and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b).

### a. Predominance of common questions of law or fact.

"Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino*, 97 F.3d at 1234. The predominance question "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The Court, therefore, must balance concerns regarding issues common to the class as a whole with questions affecting individual class members. *Dalkon Shield*, 693 F.2d at 856.

The limitations defense issues that arose during the summary judgment proceeding shift the balance of factors in this case. In its previous certification order, the Court barely mentioned the effect of the statute of limitations. Indeed, in addressing the Class II and Class III claims, the Court did not even consider the limitations defense.

Moreover, even assuming that the Court had considered the matter, it is unlikely that the result would have been any different at that time. In response to Defendants' limitation defense, Plaintiffs had asserted that Defendants had "secreted" and "denied" any wrongful conduct. (FoAC ¶ 190.) Addition-

---

6. The rigor and difficulty of the Court's individualized analysis in its summary judgment order and its review of *Gutierrez v. Cassiar Mining Corp.*, 64 Cal.App.4th 148, 75 Cal.Rptr.2d 132 (1998) and *Lockheed Martin Corp. v. Superior Court*, 79 Cal.App.4th 1019, 94 Cal.Rptr.2d 652 (2000) have also persuaded the Court that it underestimated the difficulty of applying the in-

dividualized factors required by *Potter v. Firestone Tire and Rubber Co.*, 6 Cal.4th 965, 25 Cal.Rptr.2d 550, 863 P.2d 795 (1993) to the Class I medical monitoring claim in its July 1998 certification order.

7. *See O'Connor II*, 184 F.R.D. at 331.

ally, Plaintiffs' allegations supported the inference that no one could reasonably have learned of Defendants' alleged contamination until UCLA released a study in September 1997. (FoAC ¶ 189.) The Court did not critically scrutinize these allegations, and, with the possible exception of the UCLA study allegation,[8] could not have critically scrutinized them when the Court first certified the classes. Accordingly, Plaintiffs' argument that nothing of import has changed rings hollow.

The Court also finds unpersuasive Plaintiffs' reliance on *Ungar* and *Lamb*. In *Ungar*, the district court found that the statute of limitations did not appear to affect most of the class members and that any limitations problems "could be determined in due course in the separate trials on damages." *Ungar*, 68 F.R.D. at 140. Based on these factors, the *Ungar* court determined that the predominance test was satisfied. *Id.* This result appears to contradict the *Ungar* court's acknowledgment that if it appears that a class action will splinter into individual trials, "common questions do not predominate, and a class action is inappropriate." *Id.* at 139 (quoting 3B Moore, *Federal Practice* ¶ 23.45[2] at 23–755 (2d ed.1974)).

Additionally, the Court notes that the Third Circuit overruled the *Ungar* court's certification order. *Ungar v. Dunkin' Donuts of America, Inc.*, 531 F.2d 1211 (3d Cir.1976). Because the matter was considered on an interlocutory appeal that did not certify the statute of limitations issue, the Third Circuit did not review that aspect of the *Ungar* court's opinion. However, in a different matter, the Third Circuit found that class treatment is inappropriate where the limitations defense would result in "a class action ... devolv[ing] into a lengthy series of individual trials." *Barnes*, 161 F.3d at 149. Thus, the Third Circuit has rejected the very holding upon which Plaintiffs now seek to rely.

As to *Lamb*, the issue of certification arose early in the litigation. The *Lamb* court certi-

fied in the face of a limitations defense because the defendant had the burden of proof on that defense. *Lamb*, 59 F.R.D. at 34. Additionally, the *Lamb* court "had no intention of subverting either plaintiffs' jury trial right or the requirements of F.R.C.P. 8, 12 and 56 by adjudicating in advance of trial, as defendants desire, the individualized question of statute of limitations." *Id.* Thus, the *Lamb* court was unwilling to deny certification of an otherwise proper class action merely because of the possibility of an untested affirmative defense.

The situation here is considerably different. The statute of limitations defense is not untested. It was the subject of a weighty summary judgment motion and it proved substantially successful. Furthermore, the limitations defense raises substantial individual questions that vary among class members. The *Lamb* court provides no indication in its opinion that it faced a similar scenario.[9]

Based on the individualized, fact-intensive nature of the necessary inquiry in this case, the statute of limitations issues preclude a finding that common issues predominate over individual issues on most Class II and Class III claims. *Cf. Barnes*, 161 F.3d at 149 (finding that two individual inquiries for each class member precluded class certification); *Broussard*, 155 F.3d at 342 (finding that limitations-related questions of whether and when each class member "received, read, and understood the audit" precluded class treatment).

### b. *Superiority of class action.*

 Besides a predominance of common questions, the proponent must also show that the class action is the superior method of adjudicating the controversy. *Valentino*, 97 F.3d at 1235. A class action may be superior where "class-wide litigation of common issues will reduce litigation costs and promote greater efficiency." *Id.* at 1234. On the other hand, a greater number of individual issues results in greater difficulty in managing the class action and in lower

---

8. *See O'Connor SJM*, 92 F.Supp.2d at 1040–41.

9. Plaintiffs also rely on *Cook*. *Cook*, however, merely stated that the "commonality of impact of the alleged releases outweighs these variances,"

which included the limitations defense. *Cook*, 181 F.R.D. at 480. The Court finds that *Cook's* conclusion does not apply to this case.

judicial efficiency. *See, e.g., Dalkon Shield,* 693 F.2d at 856. "Thus, a class action is improper where an individual class member would be compelled to try numerous and substantial issues to establish his or her right to recover individually, after liability to the class is established." *O'Connor II,* 184 F.R.D. at 340.

██ Plaintiffs argue that "the appropriate method for addressing individual issues such as statute of limitations defenses is via questionnaires at the claims stage." (Pls.' Opp. at 25.) Plaintiffs' proposal, however, eviscerates the role of the limitations defense in this case. As shown by the evidence presented by the parties in connection with the summary judgment motion, the application of the limitations defense in this matter is not based on easily verifiable "objective" criteria.[10] The individualized analysis contained in the Court's order illustrated that the limitations defense cannot be applied across the board to the class. The futility of reliance on questionnaires in this complex, individualized inquiry is now obvious. Thus, ultimately, the limitations defense would require individual trials for each of the class members.

Plaintiffs propose that the Court hold those individual trials only after Plaintiffs establish Defendants' overall "liability" in a class trial. Unfortunately, Plaintiffs do not acknowledge that the limitations defense also precludes liability for wrongful conduct falling outside the limitations period. Thus, at least in this case, a class trial on liability without any reference to the limitations defense runs "the real risk . . . of a composite case being much stronger than any plaintiff's individual action would be . . . [and] permitt[ing] plaintiffs to strike [Defendants] with selective allegations, which may or may

not have been available to individual named plaintiffs." *Broussard,* 155 F.3d at 345.

Especially considering the other management options mentioned by Defendants, (Defs.' Reply at 24), the Court finds that class treatment is not the superior way of treating the Class II claims for non-continuing property damage[11] or the Class III CERCLA claim. Accordingly, decertification of these claims is appropriate.

### 2. Plaintiff's intervention motion is moot.

The Court's decision to decertify these class claims does not rely upon the individual characteristics of the class representatives. Accordingly, the result would be no different if Plaintiffs named different class representatives. Thus, Plaintiffs' motion to intervene as to these claims is now moot and is denied to that extent.

### 3. Rule 23(a) requirements.

As with the Samuels' claims, the summary judgment order has severely restricted the Class II representatives' claims as compared with the relief sought by the class. Similarly, the Class III representatives' CERCLA claim is severely restricted as compared with the relief sought by the class. Moreover, it is possible that some class member could conceivably recover for wrongful conduct for which the present class members could not recover.[12] Thus, the representative claims are no longer aligned with the asserted class claims. Because of this tension, the typicality and adequacy requirements are no longer met. Accordingly, if decertification were inappropriate under the requirements of Rule 23(b)(3), the Court would decertify because the class representatives no longer meet the typicality and adequacy requirements.

---

10. Indeed, even as to those claims where the summary judgment motion was denied, the Court did not find that those Plaintiffs defeated Defendants' limitations defense. Defendants' motion was denied because Plaintiffs had shown a genuine issue of fact for resolution by a trier-of-fact. In the end, it is at least conceivable that a trier-of-fact may determine that those claims that survived summary judgment are also precluded by the limitations bar.

11. These are claims ten through thirteen, fifteen, and seventeen. These are claims based on the Price Anderson Act, negligence and negligence *per se* theories, a strict liability theory, permanent trespass, and permanent nuisance.

12. In contrast, although the representatives' unfair business practices claim is substantially limited, no class member could hold Defendants liable for conduct outside the limitations period.

### E. The Continuing Trespass and Nuisance Claims.

Plaintiffs argue that, in any event, the Court should not decertify the continuing claims [13] because those claims do not involve the individualized questions about the limitations defense. The Court agrees that the issues considered by the Court in evaluating the limitations defense do not directly affect the continuing claims. However, the Court finds that decertification of these claims is required.

#### 1. Rule 23(a) requirements.

#### a. Class Definition under Rule 23(a)(1).

▉ To satisfy the requirements of Rule 23(a)(1), a plaintiff must establish that a class does in fact exist. *O'Connor II*, 184 F.R.D. at 319. "A class definition should be 'precise, objective, and presently ascertainable.'" *Id.* (quoting *Manual for Complex Litigation Third* § 30.14 at 217 (1995)). In their motion to certify the class, Plaintiffs defined the class by reference to a contamination area. *Id.* at 320. Expert models simulating dispersion of toxic substances, in turn, defined the borders of the contamination area. Specifically, the models showed the dispersion of a toxic groundwater plume and toxic air plumes. *Id.*

The model for groundwater plume was based on a theoretical release of tricholoroethylene ("TCE") over a forty year period from the 1950's to the 1980's. *Id.* at 321–23. In opposing the motion for certification, Defendants put forth evidence showing that recent well samplings disclosed a lack of TCE contamination. *Id.* at 323–24. The Court noted that "the data relied on by Defendants to support their argument that no TCE contamination exists related to water testing performed in the late 1980's and the 1990's, when TCE released during the 1950's through 1970's would have already migrated past the monitoring point." *Id.* at 323. The Court made similar findings in regard to the air plumes. *See id.* at 325.

Thus, although the Court found that the class definition was reasonable for purposes of claims seeking relief for the injuries resulting from decades of contamination by Defendants, the present class definition is not reasonable for a lawsuit seeking to recover for property damage that occurred only after 1994.

#### b. Typicality and adequacy requirements.

Additionally, the Court finds that maintaining a class action lawsuit based solely on the continuing claims would not adequately protect the interests of the unnamed class members. The representative parties would inadequately protect the interests of the class because they are seeking limited relief for an injury based on limited legal grounds. Thus, the interests of the unnamed class members could be compromised by the doctrine of claim preclusion.

▉ "The doctrine of claim preclusion (res judicata) provides that a final judgment on the merits bars a subsequent action between the same parties or their privies over the same cause of action." *In re Imperial Corp. of America*, 92 F.3d 1503, 1506 (9th Cir.1996). A judgment in a class action lawsuit binds all the class members and carries the same preclusive effect as a non-class action judgment. *See Dosier v. Miami Valley Broadcasting Corp.*, 656 F.2d 1295, 1298 (9th Cir.1981). To determine whether successive lawsuits are the same cause of action, a court will consider the following factors:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Imperial Corp.*, 92 F.3d at 1506 (quoting *Nordhorn v. Ladish Co., Inc.*, 9 F.3d 1402, 1405 (9th Cir.1993)). A judgment in an earlier action prevents a future action on all

---

**13.** These claims are for continuing trespass (Claim 14), continuing private nuisance (Claim 17), continuing public nuisance (Claim 18), and continuing public nuisance *per se* (Claim 19).

grounds that could have been raised in the earlier action. *Id.*[14]

At least theoretically, the unnamed class members can raise any of the various claims (legal theories) that will be decertified. Indeed, the class representatives are proceeding on each of the claims that will be decertified, albeit restricted to injuries occurring within the limitations period. Those other theories could provide a greater level of relief for the same injury than would be provided by the continuing claims. *See Capogeannis v. Superior Court*, 12 Cal.App.4th 668, 675–76, 15 Cal.Rptr.2d 796 (1993) (noting that permanent nuisance allows recovery of all past, present, and future damages but that continuing nuisance only allows recovery for injury within three years of complaint's filing).

Accordingly, if the Court allowed Plaintiffs to proceed to judgment as a class on the continuing claims, the unnamed class members could be precluded from prosecuting claims that might provide for a greater level of recovery. Such a result would occur whether or not the continuing claims prove to be successful.[15] Thus, the Court cannot find that the present class representatives would be adequate representatives for the class.

### 2. Rule 23(b)(3) requirements.

The Court also finds that maintaining a class claim for the continuing claims would not satisfy the requirements of Rule 23(b)(3).[16]

14. The Court makes the unverified assumption that the claim preclusive effect of any judgment in this case would be determined by federal law. However, the same inadequacy of representation problems would be presented if California law determined the preclusive effect of the judgment. *See generally Migliori v. Boeing North American*, 97 F.Supp.2d 1001, 1006 (C.D.Cal.2000) (discussing claim preclusion doctrine under California law).

15. The Court notes that Defendants assert that the named representatives have no evidence of contamination on their property. It has not escaped the Court's notice that Plaintiffs have not attempted to contradict Defendants on this point. Although the issue is merits-based, the Court finds Plaintiffs' silence on the matter perplexing.

### a. Predominance of common questions.

In its certification Order, the Court accepted Plaintiffs' representation that they would "establish on a class-wide basis the extent to which the population and real property surrounding the Rocketdyne Facilities was exposed to Defendants' releases of the Contaminants." *O'Connor II*, 84 F.R.D. at 340 (internal quotations omitted). The Court also accepted Plaintiffs' position that they could establish "diminution in value of their property . . . on a class-wide basis." *Id.* at 341.

The Court's findings in granting certification illustrate the problem of giving class treatment to the continuing claims. A plaintiff seeking to recover for a permanent trespass or nuisance may potentially recover for "all past, present, and future damage." *Baker v. Burbank–Glendale–Pasadena Airport Authority*, 39 Cal.3d 862, 869, 218 Cal.Rptr. 293, 705 P.2d 866 (1985). In other words, a successful permanent nuisance or trespass claim allows a plaintiff to recover for the full diminution in the value of his or her property. On the other hand, recovery on a continuing trespass or nuisance claim is "limited . . . to the actual injury suffered prior to commencement of each action." *Id.*

Clearly, Plaintiffs' class-wide showing of injury depends on establishing liability under legal theories that permit full recovery for that injury. Thus, Plaintiffs have not explained how damage under the legal theories of continuing trespass and nuisance can be calculated on a class-wide basis.

Although the Court would not attempt to balance disputed facts, a class representative who cannot present a minimal level of facts to support his or her claims three years after the filing of a complaint cannot be said to be an adequate representative.

Nevertheless, the Court does not rely on this ground as a basis for decertification because there are other sufficient reasons for decertifying the classes. However, Plaintiff's argument that the Court should continue to treat the continuing claims as class claims is not assisted by their failure to address, in any fashion, Defendants' assertions.

16. The Court addresses the Rule 23(b)(3) requirements because Class II was certified under Rule 23(b)(3).

Moreover, Plaintiffs ignore the California cases emphasizing that a determination that a trespass or nuisance is continuing requires an evaluation of the individual characteristics of a property. *See, e.g., Beck Development Co, Inc. v. Southern Pacific Transp. Co.,* 44 Cal.App.4th 1160, 1217–23, 52 Cal.Rptr.2d 518. A continuing nuisance is a nuisance that is reasonably abatable. *Mangini v. Aerojet–General Corp.,* 12 Cal.4th 1087, 1100, 51 Cal.Rptr.2d 272, 912 P.2d 1220. "Abatable," for purposes of the continuing nuisance theory, "means that the nuisance can be remedied at a reasonable cost by reasonable means." *Id.* at 1103, 51 Cal.Rptr.2d 272, 912 P.2d 1220. Thus, abatability presents a question of fact in which the cost of remediation plays a considerable role. *Id.* at 1101, 51 Cal.Rptr.2d 272, 912 P.2d 1220; *Beck,* 44 Cal.App.4th at 1222, 52 Cal.Rptr.2d 518 (noting that the issue of cost must be balanced against the detriment to the plaintiff from failing to remediate).

Of course, Plaintiffs claim that they can establish the extent of each property's contamination on a class-wide basis. The extent of contamination, however, is insufficient to establish abatability. *See Mangini,* 12 Cal.4th at 1103, 51 Cal.Rptr.2d 272, 912 P.2d 1220 (considering how much land has to be decontaminated, how depth of the contamination, and the cost); *Beck,* 44 Cal.App.4th at 1221–22, 52 Cal.Rptr.2d 518 (considering various factors including size of lot, use of the property, feasibility of abatement from regulatory and public point of view, and cost). Indeed, even the cost of remediation depends on much more than the amount of contamination on a particular lot. Characteristics that vary from lot to lot must be considered in determining abatability.

The Court certified this case two years ago even though these individualized questions were, at that time, part of the equation. As Plaintiffs talismanically state, nothing has changed in regards to the continuing nuisance and trespass theories of recovery. However, after considering Defendants' summary judgment motion, the Court believes that it has a more realistic appreciation of

the effect of individualized questions in this proceeding. Moreover, the Court considers it appropriate to acknowledge that the certification of this case over two years ago was, in the Court's opinion, a close question. The Court's decision to decertify the "permanent" claims [17] changes the calculus as to the issue of predominance. With those claims removed from the equation, the Court concludes that common questions no longer predominate over individual questions.

### b. Superiority of class action.

■ The lack of predominance is best demonstrated by the continuing claims' failure to fit into Plaintiffs' proposed trial plan. In its previous order, the Court found that the class treatment was the superior mode of dealing with Plaintiffs' property claims, in part, based on Plaintiffs' trial plan. Plaintiffs described a four stage trial plan. *See O'Connor II,* 184 F.R.D. at 342. The first three stages would have established liability and most damage issues on a class-wide basis. *Id.* Specifically, the first stage would establish that Defendants were liable on a class-wide basis. (Capello Decl. re Mot. for Class Cert. ¶ 15.) The second stage would address the extent of mandatory injunctive relief on a class-wide basis. (*Id.* at ¶ 16.) The third stage would establish most monetary damages on a class-wide basis. (*Id.* at ¶ 17.) After those stages,

> The few remaining issues, such as the response costs to which individual class members may be entitled under CERCLA and the restitution to which other class members may be entitled under the UCA, can be adjudicated on a class member by class member basis under the supervision of a court-appointed magistrate or retired judge.

(*Id.* at ¶ 18.) However, the individual question of whether a particular property is abatable cannot wait until the last stage. Indeed, a plaintiff can establish liability for a continuing nuisance or trespass only if he or she can show that the contamination is abatable. *See Mangini,* 12 Cal.4th at 1103, 51 Cal.Rptr.2d 272, 912 P.2d 1220. Thus, Plaintiffs cannot establish liability in the first stage of the trial

---

17. By permanent claims, the Court refers to the permanent trespass, permanent private nuisance, strict liability, negligence, negligence *per se,* and Price Anderson Act claims.

without conducting a series of mini-trials litigating the abatability of each and every class member who seeks damages.

In contrast, Defendants propose a management plan that could sufficiently provide a vehicle for multiple plaintiffs, without disregarding the individual issues that must be addressed before liability can be found.

> [T]he related actions currently pending could be consolidated for pre-trial purposes.... [After motions for summary judgment, t]he claims that remain could be litigated according to a phased pre-trial plan requiring each plaintiff to establish, in stages [addressing] (1) evidence of exposure, (2) proof of general causation, (3) proof of specific causation in order to proceed.... The Court could then consider trial alternatives, such as bellwether trial plaintiffs, or consolidated trials.

(Defs.' Reply at 24.) Although the Court in no way adopts Defendants' proposed plan,[18] the plan demonstrates that this litigation can proceed, and provide multiple plaintiffs with a forum in which to press their claims, without the necessity of class action treatment. *See also Manual for Complex Litigation Third* § 41.52 (Management Order for Mass Tort Case). Thus, the Court finds that class treatment of only the continuing claims would not be the superior method of litigating those claims.[19]

For all these reasons, Class II as a whole is decertified.

## F. Section 17200 Claim.

Defendants seek to decertify the § 17200 claim on the grounds that (1) Plaintiffs are inadequate representatives under Rule 23(a), and (2) class treatment is not the superior method of treating § 17200 claims. The Court acknowledges that the § 17200 claims may suffer from the same deficiencies in satisfying the requirements of Rule 23(a) as

that suffered by the continuing claims. The Court, however, does not reach any findings in connection with Rule 23(a) because the Court finds that the superiority requirement of Rule 23(b)(3) is not met.

### 1. *Rule 23(b)(3) is applicable to the § 17200 claim.*

In its certification order, the Court certified the Class III claims, including the § 17200 claim, under the requirements of Rule 23(b)(3). Accordingly, the Court looks to Rule 23(b)(3) to determine whether it is viable to continue to treat the § 17200 claim as a class claim.

Plaintiffs' argument that the § 17200 claim could be maintained under Rule 23(b)(2) misses the mark. Whether the claim could be, or could have been, certified under Rule 23(b)(2) is irrelevant because it was not certified under Rule 23(b)(2). Moreover, the Court below finds that California's Unfair Business Practices Act allows Plaintiffs to receive the same relief in their individual capacities that they seek through the class action mechanism. The Court, therefore, sees nothing to be gained by allowing the § 17200 claim to proceed as a class action, either under Rule 23(b)(3) or 23(b)(2).[20]

### 2. *The superiority requirement.*

In determining whether class treatment is superior, a court must "assess the advantages of alternative procedures for handling the total controversy." *Kamm v. California City Development Co.*, 509 F.2d 205, 211–12 (9th Cir.1975). Under California's Unfair Business Practices Act, a plaintiff can seek § 17200 relief on behalf of the general public in a "representative action" without class certification. *Kraus v. Trinity Management Servs., Inc.*, 23 Cal.4th 116, 126, n. 10, 96 Cal.Rptr.2d 485, 999 P.2d 718 (2000); *Wilner v. Sunset Life Ins. Co.*, 78

---

18. Before adopting any management plan, the input of the affected plaintiffs would have to be considered. Indeed, Defendants' plan may not sufficiently address the concerns of the Plaintiffs in this case, let alone the concerns of any other plaintiff who may file a lawsuit.

19. As with the permanent claims, the intervention of new class representatives would not affect

the Court's analysis of the viability of treating the continuing claims as class claims.

20. Moreover, even if the Court were inclined to permit Plaintiffs to proceed under Rule 23(b)(2), Plaintiffs would need to show that the requirements of Rule 23(a) continue to be satisfied in light of the Court's treatment of the continuing claims.

Cal.App.4th 952, 969, 93 Cal.Rptr.2d 413 (2000). Because Plaintiffs can receive the full extent of relief that they seek on behalf of the class through a § 17200 "representative action," the Court sees no benefit from maintaining this claim as a class action. Indeed, "[i]n contrast to the streamlined procedure" of a § 17200 action, "the management of a class action is a difficult legal and administrative task." *See Dean Witter Reynolds, Inc. v. Superior Court,* 211 Cal.App. 3th 758, 773, 259 Cal.Rptr. 789 (1989) (internal quotations omitted); *Wilner,* 78 Cal.App.4th at 969, 93 Cal.Rptr.2d 413 (quoting *Dean Witter*).

Plaintiffs argue that a class action is superior to the "representative action" because federal law precludes a § 17200 "representative action." Plaintiffs are wrong. A plaintiff can pursue a § 17200 "representative action" in federal court. *See Andrews v. Trans Union Corp., Inc.,* 7 F.Supp.2d 1056, 1083 (C.D.Cal.1998) (allowing plaintiff to pursue representative claim) *overruled on other grounds by Andrews v. TRW, Inc.,* 225 F.3d 1063 (9th Cir.2000); *Haskell v. Time Inc.,* 965 F.Supp. 1398, 1402–03 (E.D.Cal.1997) (finding plaintiff had standing to assert representative claim); *cf. Freeman v. Time Inc.,* 68 F.3d 285, 287 (9th Cir.1995) (affirming dismissal of claim under Fed.R.Civ.P. 12(b)(6) without questioning subject matter jurisdiction). Of course, to assert a § 17200 representative claim in federal court, a plaintiff must show that he or she has Article III standing. *See MAI Systems Corp. v. UIPS,* 856 F.Supp. 538, 540–42 (N.D.Cal.1994). A plaintiff, however, must also meet Article III standing requirements to prosecute a class action claim. *See Casey v. Lewis,* 4 F.3d 1516, 1519 (9th Cir.1993). Thus, the Court rejects Plaintiffs' argument.[21]

Because the § 17200 claim does not meet the requirements of Rule 23(b)(3), the Court decertifies all of the Class III claims.

### G. Plaintiffs' Motion to Intervene.

Plaintiffs seek to add new class representatives who they believe will more properly represent the various classes. However, as described above, the addition of new class representatives does not preclude decertification of the classes. Accordingly, the Court could deny Plaintiffs' motion as moot.

The Court, however, also notes that neither the requirements of Fed.R.Civ.P. 24 or CERCLA are met. Rule 24(a) provides:

Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a). Plaintiffs assert that this Court must allow them to intervene under Rule 24(a)(1) because CERCLA gives them an unconditional right to intervene. The Court disagrees. CERCLA provides:

In any action commenced under [CERCLA] …, any person may intervene as a matter of right when such person claims an interest relating to the subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest, unless the President or the State shows that the person's interest is adequately represented by existing parties.

42 U.S.C. § 9613(i). Thus, both CERCLA and Rule 24 require a Court to allow a party to intervene only if disposition of the case would impair or impede that party's interests.

The proposed class representatives, however, fail to show that the Court's decertification would impair or impede their interests for two reasons. First, they fail to present any evidence showing that they satisfy the typicality and adequacy requirements of Rule 23(a). Plaintiffs merely present the declaration of one of their attorneys. That attorney

---

**21.** As with all the other previously certified class claims, different named representatives would not preclude decertification of the § 17200 claim.

concludes, "None of the Intervenors fall under the Court's criteria for determining an untimely claim." (Noël Decl. ¶ 5.) However, no evidence is presented to support this conclusion. Thus, the Court is not convinced that the intervenors would be in any better position than the present representatives.

Second, and more important, Plaintiffs fail to explain how decertification would adversely affect the intervenors' interest. Plaintiffs argue that the Court's summary judgment order adversely impacts the intervenors' interests. That conclusion holds true only if the Court allowed the class action to continue. Under those circumstances, the present representatives would not be adequate representatives for the interests of the intervenors. However, the Court's decertification of the class also removes the threat of an adverse impact on the intervenor's individual interests. Accordingly, the Court finds that the intervenors are not entitled to intervene as of right.

Plaintiffs also seek to add the new representatives under Rule 24(b), which provides for intervention in the Court's discretion. Plaintiffs' purpose in seeking intervention is to "address the issue of adequacy" and thereby salvage the class certification. (Pls.' Mot. at 4–5.) The Court, however, has found that intervention would not prevent decertification. Accordingly, the Court finds that permissive intervention under Rule 23(b) is inappropriate.

### III. Conclusion

Because the requirements of Rule 23 are no longer satisfied, the Court ORDERS Class I, Class II, and Class III decertified.

Furthermore, the Court DENIES Plaintiffs' motion to intervene new class representatives.

**SO ORDERED.**